# COMPOSITE EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

In Re: Application of Multiflora International LTD., et al.

| | )
|---|---|
| _Plaintiff_ | )
| v. | )       Civil Action No.
| | )
| | )
| _Defendant_ | )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Bank of America, N.A. c/o Custodian of Records
800 Samoset Drive, Newark, DE 19713

_(Name of person to whom this subpoena is directed)_

✄ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Exhibit A.

| Place: To be specified upon the court granting leave to issue the subpoena. | Date and Time: To be specified upon the court granting leave to issue the subpoena. |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     10/13/2020

_CLERK OF COURT_

OR

_____          _____
_Signature of Clerk or Deputy Clerk_                    s/Rafael R. Ribeiro
                                                         _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Multiflora International Ltd.,Agrícola Esperanza Jacobi, S.A., Agrícola Esperanza Jacobi, S.A. , who issues or requests this subpoena, are:
Marty Steinberg, Rafael R. Ribeiro, Richard C. Lorenzo, Hogan Lovells US LLP,  600 Brickell Avenue, Suite 2700, Miami, FL.  33131,
Tel: (305) 459-6500. Email: marty.steinberg@hoganlovells.com, rafael.ribeiro@hoganlovells.com, richard.lorenzo@hoganlovells.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the requests listed below:

1.      "You," "Your" and/or "BoA" means Bank of America N.A., including any employee, agent, representative, accountant, or attorney for Bank of America N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Bank of America N.A., including but not limited to Bank of America N.A. located at 800 Brickell Ave, Miami, Florida 33131.

2.      "Christian" means Christian Rasch, including any employee, agent, representative, family member, or attorney for Christian Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Christian Rasch.

3.      "Olaf" means Olaf Rasch, including any employee, agent, representative, or attorney for Olaf Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Olaf Rasch.

4.      "Allan" means Allan Rasch, including any employee, agent, representative, or attorney for Allan Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Allan Rasch.

5.      "Nadine" means Nadine Rasch, including any employee, agent, representative, or attorney for Nadine Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Nadine Rasch.

6.      "Alexandra" means Alexandra Rasch, including any employee, agent, representative, or attorney for Alexandra Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Alexandra Rasch.

7. "Jacqueline" means Jacqueline Rasch, including any employee, agent, representative, or attorney for Jacqueline Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Jacqueline Rasch.

8. "Mr. Feuerman" means Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, including any partner, employee, agent, representative, or attorney for Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP.

9. "Multiflora" means Multiflora International Ltd., including any employee, agent, representative, accountant, or attorney for Multiflora International Ltd., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Multiflora International Ltd.

10. "Entre Ríos" means Agrícola Industrial Entre Ríos, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Industrial Entre Ríos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Industrial Entre Ríos, S.A.

11. "Esperanza Jacobi" means Agrícola Esperanza Jacobi, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Esperanza Jacobi, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Esperanza Jacobi, S.A.

12. "Jacobi International" means Jacobi International, Inc., including any employee, agent, representative, accountant, or attorney for Jacobi International, Inc., and any other person,

entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jacobi International, Inc.

13.     "Cart Investments" means Cart Investments, Inc., including any employee, agent, representative, accountant, or attorney for Cart Investments, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Cart Investments.

14.     "QB Inversiones, S.A." means QB Inversiones, S.A., including any partner, employee, agent, representative, or attorney for QB Inversiones, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of QB Inversiones, S.A.

15.     "J Dos, S.A."   means J Dos, S.A., including any partner, employee, agent, representative, or attorney for J Dos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of J Dos, S.A.

16.     "Morgan Stanley" means collectively Morgan Stanley Bank, N.A., including any employee, agent, representative, accountant, or attorney for Morgan Stanley Bank, N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Morgan Stanley Bank, N.A.

17.     "The Christian Rasch Group" means and includes any or all of the following individuals, as well as their representatives, agents, employees, and attorneys:

a)   Christian;
b)   Nadine;
c)   Alexandra;
d)   Jacqueline;
e)   Mr. Feuerman;
f)   Multiflora;

g) Entre Ríos;

h) Esperanza Jacobi;

i) Jacobi International;

j) Cart Investments;

k) QB Inversiones, S.A.; or

l) J Dos, S.A.

18.     "Accounts" means any account, including but not limited to personal, business, checking, money market, securities, credit, loans, safety deposit boxes, certificates of deposit, annuity, 401k, brokerage, or savings accounts related to the Christian Rasch Group, including but not limited to BoA account number xxxx xxxx 6158 or Morgan Stanley account number AAA— 9489.

19.     "Real Estate Records" means all records related to the acquisition, purchase, sale or transfer of real property, including but not limited to sales contracts, appraisals, deeds, security deeds, applications for financing or mortgages, loan applications, financing or mortgages, closing statements, leases, title documents, Title search  and/or report, title insurance, property insurance, property taxes, communications with real estate agents, commissions, settlement statement, records of any deposit, closing costs, real estate brochures or marketing documents regarding the property, any sources of funds such as bank or brokerage accounts, lines of credit, loans, transfers or other sources of funding.

20.     The term "communication" shall mean any conversation, discussion, letter, memorandum, note, e-mail, voice mail, text, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

21.     The term "person" shall mean and refer to the plural as well as the singular of, and includes without limitation, any natural person, partnership, joint venture, association, union, trust, corporation, firm, legal or governmental entity, any division, department or other unit thereof, and any other firm or entity of whatsoever kind, nature or description.

22.     The term "document" as used herein shall mean every form of recording any form of communication (as defined above) or representation upon any tangible thing, including letters, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic, electronic transmission such as email text and other forms of electronic transmission, or by photographic means, magnetic impulse, tape, computer disk, and/or any other form of data storage, data compilation, or mechanical or electronic recording, and all other "documents" or "things" within the meaning of the Florida Rules of Civil Procedure.  Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

23.     The term "document" (defined above) applies to all information within your possession, custody, or control, including without limitation any attorney, accountant, or other agent or representative for you, as defined above.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or a copy of the document from any person or public or private entity having physical possession of the document.  Every draft, annotated version, or otherwise non-identical copy of a document is a separate document for the purposes of these requests.

24.      "Relating to," "referring to" or "regarding" a given subject matter shall be construed to include all documents or things embodying, comprising, referring to, constituting, containing, memorializing, evidencing, describing, reflecting, identifying, supporting, analyzing,

5

discussing, mentioning, summarizing, stating, or pertaining in any way to, in whole or in part, the stated subject matter.

25.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside of its scope.

26.     The singular shall include the plural and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

27.     The past tense shall include the present tense and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

28.     If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce such document, please provide, at the time at which the other documents are produced, a log which sets forth, separately for each document not produced:  (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed, by any entity; (5) the identity and location of each person having or last having possession, care, custody, or control of the document, and of each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you

claim such a privilege or ground for your refusal to produce, in such detail as would be required for the undersigned to test the claim of privilege on a motion to compel.

29.     In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photographic or electrostatic duplicate of all written or printed material on the original file folder.  In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder.  The integrity and internal sequence of the requested documents within each folder shall not be disturbed.  Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

30.     If any document, or any part of a document, called for in any request has been destroyed, discarded, lost, or otherwise disposed of, or placed beyond your possession, custody, or control, or withheld, you are requested to provide a list setting forth each such document. Such list shall include identification of the author, recipient, date, and description of each document and an explanation of why the document is no longer in your possession, custody, or control.  With specific reference to destroyed, discarded or withheld documents, the list shall include whether the absence of the listed document was inadvertent or intentional, and, if the destruction was intentional, whether the destruction was part of a company or firm policy relating to the destruction of documents.

31.     Unless otherwise indicated, each individual request herein refers to documents which were prepared or created since the Accounts were opened until the date of these requests.

## DOCUMENTS TO BE PRODUCED

1.     Any documents identifying accounts at any financial institution, brokerage or any other entity which maintains funds or investments for any accounts for the Christian Rasch

Group or to which the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to ("The Accounts").

2.      Any documents of deposits to or transfers, disposition of or withdrawals from the Accounts.

3.      Any and all letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for all transactions, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts.

4.      Any and all records pertaining to the opening or establishment of the Accounts, including but not limited to internal bank documents, applications, resolutions, signature cards, financial statements, or similar documents submitted or considered for the purposes of opening the Accounts.

5.      All documents and communications reflecting, referring, or relating to the Real Estate Records for the Christian Rasch Group.

6.      Any and all records pertaining to accounts established and maintained by your institution for the Christian Rasch Group, or at another institution, as reflected by your records.

7.      Any and all loan applications, financial statements or similar documents related to, or submitted by or on behalf of the Christian Rasch Group.

8.      Any and all records signed by the Christian Rasch Group.

9.      Any and all correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Christian Rasch Group or the Accounts, including any documents that relate to any Account activity or any inquiry or analysis into one or more of the Accounts or their activity.

10.      Any and all documents containing information concerning access to the Accounts at any time through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

11.      Any request or communications concerning changing or termination of the Accounts.

12.      Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

13.      Any records related to any safety deposit box or the use thereof.

14.      Any records related to investments, instructions to invest, or any other aspect of investment of funds.

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

In Re: Application of Multiflora International LTD., et al.

| | |
|---|---|
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. |
| | ) |
| _____ | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Bank of America, N.A. c/o Custodian of Records
           701 Brickell Avenue, Miami, FL  33131

*(Name of person to whom this subpoena is directed)*

✂ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

> See attached Exhibit A.

| Place: To be specified upon the court granting leave to issue the subpoena. | Date and Time: <br> To be specified upon the court granting leave to issue the subpoena. |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/13/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | s/Rafael R. Ribeiro |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Multiflora International Ltd.,Agrícola Esperanza Jacobi, S.A., Agrícola Esperanza Jacobi, S.A. , who issues or requests this subpoena, are:
Marty Steinberg, Rafael R. Ribeiro, Richard C. Lorenzo, Hogan Lovells US LLP,  600 Brickell Avenue, Suite 2700, Miami, FL.  33131, Tel: (305) 459-6500. Email: marty.steinberg@hoganlovells.com, rafael.ribeiro@hoganlovells.com, richard.lorenzo@hoganlovells.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the requests listed below:

1.    "You," "Your" and/or "BoA" means Bank of America N.A., including any employee, agent, representative, accountant, or attorney for Bank of America N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Bank of America N.A., including but not limited to Bank of America N.A. located at 800 Brickell Ave, Miami, Florida 33131.

2.    "Christian" means Christian Rasch, including any employee, agent, representative, family member, or attorney for Christian Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Christian Rasch.

3.    "Olaf" means Olaf Rasch, including any employee, agent, representative, or attorney for Olaf Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Olaf Rasch.

4.    "Allan" means Allan Rasch, including any employee, agent, representative, or attorney for Allan Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Allan Rasch.

5.    "Nadine" means Nadine Rasch, including any employee, agent, representative, or attorney for Nadine Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Nadine Rasch.

6.    "Alexandra" means Alexandra Rasch, including any employee, agent, representative, or attorney for Alexandra Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Alexandra Rasch.

1

7.     "Jacqueline" means Jacqueline Rasch, including any employee, agent, representative, or attorney for Jacqueline Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Jacqueline Rasch.

8.     "Mr. Feuerman" means Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, including any partner, employee, agent, representative, or attorney for Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP.

9.     "Multiflora" means Multiflora International Ltd., including any employee, agent, representative, accountant, or attorney for Multiflora International Ltd., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Multiflora International Ltd.

10.     "Entre Ríos" means Agrícola Industrial Entre Ríos, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Industrial Entre Ríos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Industrial Entre Ríos, S.A.

11.     "Esperanza Jacobi" means Agrícola Esperanza Jacobi, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Esperanza Jacobi, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Esperanza Jacobi, S.A.

12.     "Jacobi International" means Jacobi International, Inc., including any employee, agent, representative, accountant, or attorney for Jacobi International, Inc., and any other person,

2

entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jacobi International, Inc.

13.    "Cart Investments" means Cart Investments, Inc., including any employee, agent, representative, accountant, or attorney for Cart Investments, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Cart Investments.

14.    "QB Inversiones" means QB Inversiones, including any partner, employee, agent, representative, or attorney for QB Inversiones, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of QB Inversiones.

15.    "J Dos, S.A."  means J Dos, S.A., including any partner, employee, agent, representative, or attorney for J Dos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of J Dos, S.A.

16.    "Morgan Stanley" means collectively Morgan Stanley Bank, N.A., including any employee, agent, representative, accountant, or attorney for Morgan Stanley Bank, N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Morgan Stanley Bank, N.A.

17.    "The Christian Rasch Group" means and includes any or all of the following individuals, as well as their representatives, agents, employees, and attorneys:

a)  Christian;
b)  Nadine;
c)  Alexandra;
d)  Jacqueline;
e)  Mr. Feuerman;
f)  Multiflora;

3

g)  Entre Ríos;

h)  Esperanza Jacobi;

i)  Jacobi International;

j)  Cart Investments;

k)  QB Inversiones; or

l)  J Dos, S.A.

18.     "Accounts" means any account, including but not limited to personal, business, checking, money market, securities, credit, loans, safety deposit boxes, certificates of deposit, annuity, 401k, brokerage, or savings accounts related to the Christian Rasch Group, including but not limited to BoA account number xxxx xxxx 6158 or Morgan Stanley account number AAA— 9489.

19.     "Real Estate Records" means all records related to the acquisition, purchase, sale or transfer of real property, including but not limited to sales contracts, appraisals, deeds, security deeds, applications for financing or mortgages, loan applications, financing or mortgages, closing statements, leases, title documents, Title search  and/or report, title insurance, property insurance, property taxes, communications with real estate agents, commissions, settlement statement, records of any deposit, closing costs, real estate brochures or marketing documents regarding the property, any sources of funds such as bank or brokerage accounts, lines of credit, loans, transfers or other sources of funding.

20.     The term "communication" shall mean any conversation, discussion, letter, memorandum, note, e-mail, voice mail, text, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

4

21.     The term "person" shall mean and refer to the plural as well as the singular of, and includes without limitation, any natural person, partnership, joint venture, association, union, trust, corporation, firm, legal or governmental entity, any division, department or other unit thereof, and any other firm or entity of whatsoever kind, nature or description.

22.     The term "document" as used herein shall mean every form of recording any form of communication (as defined above) or representation upon any tangible thing, including letters, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic, electronic transmission such as email text and other forms of electronic transmission, or by photographic means, magnetic impulse, tape, computer disk, and/or any other form of data storage, data compilation, or mechanical or electronic recording, and all other "documents" or "things" within the meaning of the Florida Rules of Civil Procedure.  Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

23.     The term "document" (defined above) applies to all information within your possession, custody, or control, including without limitation any attorney, accountant, or other agent or representative for you, as defined above.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or a copy of the document from any person or public or private entity having physical possession of the document.  Every draft, annotated version, or otherwise non-identical copy of a document is a separate document for the purposes of these requests.

24.      "Relating to," "referring to" or "regarding" a given subject matter shall be construed to include all documents or things embodying, comprising, referring to, constituting, containing, memorializing, evidencing, describing, reflecting, identifying, supporting, analyzing,

5

discussing, mentioning, summarizing, stating, or pertaining in any way to, in whole or in part, the stated subject matter.

25.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside of its scope.

26.    The singular shall include the plural and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

27.    The past tense shall include the present tense and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

28.    If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce such document, please provide, at the time at which the other documents are produced, a log which sets forth, separately for each document not produced:  (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed, by any entity; (5) the identity and location of each person having or last having possession, care, custody, or control of the document, and of each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you

6

claim such a privilege or ground for your refusal to produce, in such detail as would be required for the undersigned to test the claim of privilege on a motion to compel.

29.     In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photographic or electrostatic duplicate of all written or printed material on the original file folder.  In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder.  The integrity and internal sequence of the requested documents within each folder shall not be disturbed.  Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

30.     If any document, or any part of a document, called for in any request has been destroyed, discarded, lost, or otherwise disposed of, or placed beyond your possession, custody, or control, or withheld, you are requested to provide a list setting forth each such document.  Such list shall include identification of the author, recipient, date, and description of each document and an explanation of why the document is no longer in your possession, custody, or control.  With specific reference to destroyed, discarded or withheld documents, the list shall include whether the absence of the listed document was inadvertent or intentional, and, if the destruction was intentional, whether the destruction was part of a company or firm policy relating to the destruction of documents.

31.     Unless otherwise indicated, each individual request herein refers to documents which were prepared or created from 2015 until the date of these requests.

## DOCUMENTS TO BE PRODUCED

1.     Any documents identifying accounts at any financial institution, brokerage or any other entity which maintains funds or investments for any accounts for the Christian Rasch

7

Group or to which the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to ("The Accounts").

2.      Any documents of deposits to or transfers, disposition of or withdrawals from the Accounts.

3.      Any and all letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for all transactions, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts.

4.      Any and all records pertaining to the opening or establishment of the Accounts, including but not limited to internal bank documents, applications, resolutions, signature cards, financial statements, or similar documents submitted or considered for the purposes of opening the Accounts.

5.      All documents and communications reflecting, referring, or relating to the Real Estate Records for the Christian Rasch Group.

6.      Any and all records pertaining to accounts established and maintained by your institution for the Christian Rasch Group, or at another institution, as reflected by your records.

7.      Any and all loan applications, financial statements or similar documents related to, or submitted by or on behalf of the Christian Rasch Group.

8.      Any and all records signed by the Christian Rasch Group.

\\MI - 767144/000001 - 705290 v4

9.	Any and all correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Christian Rasch Group or the Accounts, including any documents that relate to any Account activity or any inquiry or analysis into one or more of the Accounts or their activity.

10.	Any and all documents containing information concerning access to the Accounts at any time through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

11.	Any request or communications concerning changing or termination of the Accounts.

12.	Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

13.	Any records related to any safety deposit box or the use thereof.

14.	Any records related to investments, instructions to invest, or any other aspect of investment of funds.

## SCHEDULE A

## <u>DEFINITIONS AND INSTRUCTIONS</u>

The following definitions and instructions apply to the requests listed below:

1.      "You," "Your" and/or "BoA" means Bank of America N.A., including any employee, agent, representative, accountant, or attorney for Bank of America N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Bank of America N.A., including but not limited to Bank of America N.A. located at 800 Brickell Ave, Miami, Florida 33131.

2.      "Christian" means Christian Rasch, including any employee, agent, representative, family member, or attorney for Christian Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Christian Rasch.

3.      "Olaf" means Olaf Rasch, including any employee, agent, representative, or attorney for Olaf Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Olaf Rasch.

4.      "Allan" means Allan Rasch, including any employee, agent, representative, or attorney for Allan Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Allan Rasch.

5.      "Nadine" means Nadine Rasch, including any employee, agent, representative, or attorney for Nadine Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Nadine Rasch.

6.      "Alexandra" means Alexandra Rasch, including any employee, agent, representative, or attorney for Alexandra Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Alexandra Rasch.

7.      "Jacqueline" means Jacqueline Rasch, including any employee, agent, representative, or attorney for Jacqueline Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Jacqueline Rasch.

8.      "Mr. Feuerman" means Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, including any partner, employee, agent, representative, or attorney for Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP.

9.      "Multiflora" means Multiflora International Ltd., including any employee, agent, representative, accountant, or attorney for Multiflora International Ltd., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Multiflora International Ltd.

10.     "Entre Ríos" means Agrícola Industrial Entre Ríos, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Industrial Entre Ríos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Industrial Entre Ríos, S.A.

11.     "Esperanza Jacobi" means Agrícola Esperanza Jacobi, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Esperanza Jacobi, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Esperanza Jacobi, S.A.

12.     "Jacobi International" means Jacobi International, Inc., including any employee, agent, representative, accountant, or attorney for Jacobi International, Inc., and any other person,

entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jacobi International, Inc.

13.     "Cart Investments" means Cart Investments, Inc., including any employee, agent, representative, accountant, or attorney for Cart Investments, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Cart Investments.

14.     "QB Inversiones, S.A." means QB Inversiones, S.A., including any partner, employee, agent, representative, or attorney for QB Inversiones, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of QB Inversiones, S.A.

15.     "J Dos, S.A."  means J Dos, S.A., including any partner, employee, agent, representative, or attorney for J Dos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of J Dos, S.A.

16.     "Morgan Stanley" means collectively Morgan Stanley Bank, N.A., including any employee, agent, representative, accountant, or attorney for Morgan Stanley Bank, N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Morgan Stanley Bank, N.A.

17.     "The Christian Rasch Group" means and includes any or all of the following individuals, as well as their representatives, agents, employees, and attorneys:

    a)  Christian;
    b)  Nadine;
    c)  Alexandra;
    d)  Jacqueline;
    e)  Mr. Feuerman;
    f)  Multiflora;

g) Entre Ríos;

h) Esperanza Jacobi;

i) Jacobi International;

j) Cart Investments;

k) QB Inversiones, S.A.; or

l) J Dos, S.A.

18.     "Accounts" means any account, including but not limited to personal, business, checking, money market, securities, credit, loans, safety deposit boxes, certificates of deposit, annuity, 401k, brokerage, or savings accounts related to the Christian Rasch Group, including but not limited to BoA account number xxxx xxxx 6158 or Morgan Stanley account number AAA—9489.

19.     "Real Estate Records" means all records related to the acquisition, purchase, sale or transfer of real property, including but not limited to sales contracts, appraisals, deeds, security deeds, applications for financing or mortgages, loan applications, financing or mortgages, closing statements, leases, title documents, Title search  and/or report, title insurance, property insurance, property taxes, communications with real estate agents, commissions, settlement statement, records of any deposit, closing costs, real estate brochures or marketing documents regarding the property, any sources of funds such as bank or brokerage accounts, lines of credit, loans, transfers or other sources of funding.

20.     The term "communication" shall mean any conversation, discussion, letter, memorandum, note, e-mail, voice mail, text, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

21.     The term "person" shall mean and refer to the plural as well as the singular of, and includes without limitation, any natural person, partnership, joint venture, association, union, trust, corporation, firm, legal or governmental entity, any division, department or other unit thereof, and any other firm or entity of whatsoever kind, nature or description.

22.     The term "document" as used herein shall mean every form of recording any form of communication (as defined above) or representation upon any tangible thing, including letters, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic, electronic transmission such as email text and other forms of electronic transmission, or by photographic means, magnetic impulse, tape, computer disk, and/or any other form of data storage, data compilation, or mechanical or electronic recording, and all other "documents" or "things" within the meaning of the Florida Rules of Civil Procedure.  Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

23.     The term "document" (defined above) applies to all information within your possession, custody, or control, including without limitation any attorney, accountant, or other agent or representative for you, as defined above.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or a copy of the document from any person or public or private entity having physical possession of the document.  Every draft, annotated version, or otherwise non-identical copy of a document is a separate document for the purposes of these requests.

24.      "Relating to," "referring to" or "regarding" a given subject matter shall be construed to include all documents or things embodying, comprising, referring to, constituting, containing, memorializing, evidencing, describing, reflecting, identifying, supporting, analyzing,

discussing, mentioning, summarizing, stating, or pertaining in any way to, in whole or in part, the stated subject matter.

25.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside of its scope.

26.     The singular shall include the plural and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

27.     The past tense shall include the present tense and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

28.     If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce such document, please provide, at the time at which the other documents are produced, a log which sets forth, separately for each document not produced:  (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed, by any entity; (5) the identity and location of each person having or last having possession, care, custody, or control of the document, and of each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you

claim such a privilege or ground for your refusal to produce, in such detail as would be required for the undersigned to test the claim of privilege on a motion to compel.

29.      In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photographic or electrostatic duplicate of all written or printed material on the original file folder.  In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder.  The integrity and internal sequence of the requested documents within each folder shall not be disturbed.  Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

30.      If any document, or any part of a document, called for in any request has been destroyed, discarded, lost, or otherwise disposed of, or placed beyond your possession, custody, or control, or withheld, you are requested to provide a list setting forth each such document. Such list shall include identification of the author, recipient, date, and description of each document and an explanation of why the document is no longer in your possession, custody, or control.  With specific reference to destroyed, discarded or withheld documents, the list shall include whether the absence of the listed document was inadvertent or intentional, and, if the destruction was intentional, whether the destruction was part of a company or firm policy relating to the destruction of documents.

31.      Unless otherwise indicated, each individual request herein refers to documents which were prepared or created since the Accounts were opened until the date of these requests.

## DOCUMENTS TO BE PRODUCED

1.      Any documents identifying accounts at any financial institution, brokerage or any other entity which maintains funds or investments for any accounts for the Christian Rasch

Group or to which the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to ("The Accounts").

2.      Any documents of deposits to or transfers, disposition of or withdrawals from the Accounts.

3.      Any and all letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for all transactions, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts.

4.      Any and all records pertaining to the opening or establishment of the Accounts, including but not limited to internal bank documents, applications, resolutions, signature cards, financial statements, or similar documents submitted or considered for the purposes of opening the Accounts.

5.      All documents and communications reflecting, referring, or relating to the Real Estate Records for the Christian Rasch Group.

6.      Any and all records pertaining to accounts established and maintained by your institution for the Christian Rasch Group, or at another institution, as reflected by your records.

7.      Any and all loan applications, financial statements or similar documents related to, or submitted by or on behalf of the Christian Rasch Group.

8.      Any and all records signed by the Christian Rasch Group.

9.      Any and all correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Christian Rasch Group or the Accounts, including any documents that relate to any Account activity or any inquiry or analysis into one or more of the Accounts or their activity.

10.     Any and all documents containing information concerning access to the Accounts at any time through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

11.     Any request or communications concerning changing or termination of the Accounts.

12.     Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

13.     Any records related to any safety deposit box or the use thereof.

14.     Any records related to investments, instructions to invest, or any other aspect of investment of funds.

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

In Re: Application of Multiflora International LTD., et al.

| | |
|---|---|
| _____ | ) |
| _Plaintiff_ | ) |
| v. | )   Civil Action No. |
| | ) |
| _____ | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
> Morgan Stanley Bank, N.A. c/o Custodian of Records
> 100 S. Charles Street, 4th Floor, Baltimore, MD 21201

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

> See attached Exhibit A.

| Place: To be specified upon the court granting leave to issue the subpoena. | Date and Time: To be specified upon the court granting leave to issue the subpoena. |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  10/13/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | s/Rafael R. Ribeiro |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Multiflora International Ltd.,Agrícola Esperanza Jacobi, S.A., Agrícola Esperanza Jacobi, S.A. , who issues or requests this subpoena, are:
Marty Steinberg, Rafael R. Ribeiro, Richard C. Lorenzo, Hogan Lovells US LLP,  600 Brickell Avenue, Suite 2700, Miami, FL.  33131,
Tel: (305) 459-6500. Email: marty.steinberg@hoganlovells.com, rafael.ribeiro@hoganlovells.com, richard.lorenzo@hoganlovells.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the requests listed below:

1.      "You," "Your" and/or "Morgan Stanley" means Morgan Stanley Bank, N.A., including any employee, agent, representative, accountant, or attorney for Morgan Stanley Bank, N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Morgan Stanley Bank, N.A.

2.      "BoA" means Bank of America N.A., including any employee, agent, representative, accountant, or attorney for Bank of America N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Bank of America N.A., including, but not limited to, BoA located at 800 Brickell Ave, Miami, Florida 33131.

3.      "Christian" means Christian Rasch, including any employee, agent, representative, family member, or attorney for Christian Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Christian Rasch.

4.      "Olaf" means Olaf Rasch, including any employee, agent, representative, or attorney for Olaf Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Olaf Rasch.

5.      "Allan" means Allan Rasch, including any employee, agent, representative, or attorney for Allan Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Allan Rasch.

1

6.      "Nadine" means Nadine Rasch, including any employee, agent, representative, or attorney for Nadine Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Nadine Rasch.

7.      "Alexandra" means Alexandra Rasch, including any employee, agent, representative, or attorney for Alexandra Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Alexandra Rasch.

8.      "Jacqueline" means Jacqueline Rasch, including any employee, agent, representative, or attorney for Jacqueline Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Jacqueline Rasch.

9.      "Mr. Feuerman" means Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, including any partner, employee, agent, representative, or attorney for Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP.

10.      "Multiflora" means Multiflora International Ltd., including any employee, agent, representative, accountant, or attorney for Multiflora International Ltd., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Multiflora International Ltd.

11.      "Entre Ríos" means Agrícola Industrial Entre Ríos, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Industrial Entre Ríos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Industrial Entre Ríos, S.A.

2

12.     "Esperanza Jacobi" means Agrícola Esperanza Jacobi, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Esperanza Jacobi, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Esperanza Jacobi, S.A.

13.     "Jacobi International" means Jacobi International, Inc., including any employee, agent, representative, accountant, or attorney for Jacobi International, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jacobi International, Inc.

14.     "Cart Investments" means Cart Investments, Inc., including any employee, agent, representative, accountant, or attorney for Cart Investments, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Cart Investments.

15.     "QB Inversiones, S.A" means QB Inversiones, S.A., including any partner, employee, agent, representative, or attorney for QB Inversiones, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of QB Inversiones, S.A.

16.     "J Dos, S.A."  means J Dos, S.A., including any partner, employee, agent, representative, or attorney for J Dos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of J Dos, S.A.

17.     "The Christian Rasch Group" means and includes any or all of the following individuals, as well as their representatives, agents, employees, and attorneys:

    a) Christian;

    b) Nadine;

    c) Alexandra;

d)  Jacqueline;

e)  Mr. Feuerman;

f)  Multiflora;

g)  Entre Ríos;

h)  Esperanza Jacobi;

i)  Jacobi International;

j)  Cart Investments;

k)  QB Inversiones, S.A.; or

l)  J Dos, S.A.

18.     "Accounts" means any account, including but not limited to personal, business, checking, money market, securities, credit, loans, safety deposit boxes, certificates of deposit, annuity, 401k, brokerage, or savings accounts related to the Christian Rasch Group, including but not limited to BoA account number xxxx xxxx 6158 or Morgan Stanley account number AAA— 9489.

19.     "Real Estate Records" means all records related to the acquisition, purchase, sale or transfer of real property, including but not limited to sales contracts, appraisals, deeds, security deeds, applications for financing or mortgages, loan applications, financing or mortgages, closing statements, leases, title documents, Title search  and/or report, title insurance, property insurance, property taxes, communications with real estate agents, commissions, settlement statement, records of any deposit, closing costs, real estate brochures or marketing documents regarding the property, any sources of funds such as bank or brokerage accounts, lines of credit, loans, transfers or other sources of funding.

20.     The term "communication" shall mean any conversation, discussion, letter, memorandum, note, e-mail, voice mail, text, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which

4

abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

21.     The term "person" shall mean and refer to the plural as well as the singular of, and includes without limitation, any natural person, partnership, joint venture, association, union, trust, corporation, firm, legal or governmental entity, any division, department or other unit thereof, and any other firm or entity of whatsoever kind, nature or description.

22.     The term "document" as used herein shall mean every form of recording any form of communication (as defined above) or representation upon any tangible thing, including letters, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic, electronic transmission such as email text and other forms of electronic transmission, or by photographic means, magnetic impulse, tape, computer disk, and/or any other form of data storage, data compilation, or mechanical or electronic recording, and all other "documents" or "things" within the meaning of the Florida Rules of Civil Procedure.  Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

23.     The term "document" (defined above) applies to all information within your possession, custody, or control, including without limitation any attorney, accountant, or other agent or representative for you, as defined above.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or a copy of the document from any person or public or private entity having physical possession of the document.  Every draft, annotated version, or otherwise non-identical copy of a document is a separate document for the purposes of these requests.

24.     "Relating to," "referring to" or "regarding" a given subject matter shall be construed to include all documents or things embodying, comprising, referring to, constituting, containing, memorializing, evidencing, describing, reflecting, identifying, supporting, analyzing, discussing, mentioning, summarizing, stating, or pertaining in any way to, in whole or in part, the stated subject matter.

25.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside of its scope.

26.     The singular shall include the plural and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

27.     The past tense shall include the present tense and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

28.     If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce such document, please provide, at the time at which the other documents are produced, a log which sets forth, separately for each document not produced:  (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed, by any entity; (5) the identity and location of each person having or last having possession, care,

custody, or control of the document, and of each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you claim such a privilege or ground for your refusal to produce, in such detail as would be required for the undersigned to test the claim of privilege on a motion to compel.

29.     In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photographic or electrostatic duplicate of all written or printed material on the original file folder.  In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder.  The integrity and internal sequence of the requested documents within each folder shall not be disturbed.  Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

30.     If any document, or any part of a document, called for in any request has been destroyed, discarded, lost, or otherwise disposed of, or placed beyond your possession, custody, or control, or withheld, you are requested to provide a list setting forth each such document. Such list shall include identification of the author, recipient, date, and description of each document and an explanation of why the document is no longer in your possession, custody, or control.  With specific reference to destroyed, discarded or withheld documents, the list shall include whether the absence of the listed document was inadvertent or intentional, and, if the destruction was intentional, whether the destruction was part of a company or firm policy relating to the destruction of documents.

31.     Unless otherwise indicated, each individual request herein refers to documents which were prepared or created from since the Accounts were opened and until the date of these requests.

## DOCUMENTS TO BE PRODUCED

1.      Any documents identifying accounts at any financial institution, brokerage or any other entity which maintains funds or investments for any accounts for the Christian Rasch Group  or to which the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to ("The Accounts").

2.      Any documents of deposits to or transfers, disposition of or withdrawals from the Accounts.

3.      Any documents of transfers from the Accounts to Caban Systems and/or QB Inversiones, S.A.

4.      Any and all letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for all transactions, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts.

5.      Any and all records pertaining to the opening or establishment of the Accounts, including but not limited to internal bank documents, applications, resolutions, signature cards, financial statements, or similar documents submitted or considered for the purposes of opening the Accounts.

8

6.      All documents and communications reflecting, referring, or relating to the Real Estate Records of the Christian Rasch Group.

7.      Any and all records pertaining to accounts established and maintained by your institution for the Christian Rasch Group, or at another institution, as reflected by your records.

8.      Any and all loan applications, financial statements or similar documents related to, or submitted by or on behalf of the Christian Rasch Group.

9.      Any and all records signed by the Christian Rasch Group.

10.      Any and all correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Christian Rasch Group or to the Accounts, including any documents that relate to any Account activity or any inquiry or analysis into one or more of the Accounts or their activity.

11.      Any and all documents containing information concerning access to the Accounts at any time through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

12.      Any request or communications concerning changing or termination of the Accounts.

13.      Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

14.      Any records related to any safety deposit box or the use thereof.

15.       Any records related to investments, instructions to invest, or any other aspect of investment of funds.

9

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

In Re: Application of Multiflora International LTD., et al.

| | |
|---|---|
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Morgan Stanley Bank, N.A. c/o Custodian of Records
1111 Brickell Avenue, 14th Floor, Miami, FL. 33131

*(Name of person to whom this subpoena is directed)*

✂ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

     See attached Exhibit A.

| Place: To be specified upon the court granting leave to issue the subpoena. | Date and Time: To be specified upon the court granting leave to issue the subpoena. |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/29/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | s/Rafael R. Ribeiro |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Multiflora International Ltd.,Agrícola Esperanza Jacobi, S.A., Agrícola Esperanza Jacobi, S.A. , who issues or requests this subpoena, are: Marty Steinberg, Rafael R. Ribeiro, Richard C. Lorenzo, Hogan Lovells US LLP, 600 Brickell Avenue, Suite 2700, Miami, FL. 33131, Tel: (305) 459-6500. Email: marty.steinberg@hoganlovells.com, rafael.ribeiro@hoganlovells.com, richard.lorenzo@hoganlovells.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS AND INSTRUCTIONS**

The following definitions and instructions apply to the requests listed below:

1.     "You," "Your" and/or "Morgan Stanley" means Morgan Stanley Bank, N.A., including any employee, agent, representative, accountant, or attorney for Morgan Stanley Bank, N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Morgan Stanley Bank, N.A.

2.     "BoA" means Bank of America N.A., including any employee, agent, representative, accountant, or attorney for Bank of America N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Bank of America N.A., including, but not limited to, BoA located at 800 Brickell Ave, Miami, Florida 33131.

3.     "Christian" means Christian Rasch, including any employee, agent, representative, family member, or attorney for Christian Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Christian Rasch.

4.     "Olaf" means Olaf Rasch, including any employee, agent, representative, or attorney for Olaf Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Olaf Rasch.

5.     "Allan" means Allan Rasch, including any employee, agent, representative, or attorney for Allan Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Allan Rasch.

1

6.      "Nadine" means Nadine Rasch, including any employee, agent, representative, or attorney for Nadine Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Nadine Rasch.

7.      "Alexandra" means Alexandra Rasch, including any employee, agent, representative, or attorney for Alexandra Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Alexandra Rasch.

8.      "Jacqueline" means Jacqueline Rasch, including any employee, agent, representative, or attorney for Jacqueline Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Jacqueline Rasch.

9.      "Mr. Feuerman" means Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, including any partner, employee, agent, representative, or attorney for Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP.

10.      "Multiflora" means Multiflora International Ltd., including any employee, agent, representative, accountant, or attorney for Multiflora International Ltd., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Multiflora International Ltd.

11.      "Entre Ríos" means Agrícola Industrial Entre Ríos, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Industrial Entre Ríos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Industrial Entre Ríos, S.A.

2

12.     "Esperanza Jacobi" means Agrícola Esperanza Jacobi, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Esperanza Jacobi, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Esperanza Jacobi, S.A.

13.     "Jacobi International" means Jacobi International, Inc., including any employee, agent, representative, accountant, or attorney for Jacobi International, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jacobi International, Inc.

14.     "Cart Investments" means Cart Investments, Inc., including any employee, agent, representative, accountant, or attorney for Cart Investments, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Cart Investments.

15.      "QB Inversiones" means QB Inversiones, including any partner, employee, agent, representative, or attorney for QB Inversiones, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of QB Inversiones.

16.     "J Dos, S.A."  means J Dos, S.A., including any partner, employee, agent, representative, or attorney for J Dos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of J Dos, S.A.

17.      "The Christian Rasch Group" means and includes any or all of the following individuals, as well as their representatives, agents, employees, and attorneys:

    a)  Christian;
    b)  Nadine;
    c)  Alexandra;

3

d) Jacqueline;

e) Mr. Feuerman;

f) Multiflora;

g) Entre Ríos;

h) Esperanza Jacobi;

i) Jacobi International;

j) Cart Investments;

k) QB Inversiones; or

l) J Dos, S.A.

18.     "Accounts" means any account, including but not limited to personal, business, checking, money market, securities, credit, loans, safety deposit boxes, certificates of deposit, annuity, 401k, brokerage, or savings accounts related to the Christian Rasch Group, including but not limited to BoA account number xxxx xxxx 6158 or Morgan Stanley account number AAA—9489.

19.     "Real Estate Records" means all records related to the acquisition, purchase, sale or transfer of real property, including but not limited to sales contracts, appraisals, deeds, security deeds, applications for financing or mortgages, loan applications, financing or mortgages, closing statements, leases, title documents, Title search  and/or report, title insurance, property insurance, property taxes, communications with real estate agents, commissions, settlement statement, records of any deposit, closing costs, real estate brochures or marketing documents regarding the property, any sources of funds such as bank or brokerage accounts, lines of credit, loans, transfers or other sources of funding.

20.     The term "communication" shall mean any conversation, discussion, letter, memorandum, note, e-mail, voice mail, text, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which

4

abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

21.     The term "person" shall mean and refer to the plural as well as the singular of, and includes without limitation, any natural person, partnership, joint venture, association, union, trust, corporation, firm, legal or governmental entity, any division, department or other unit thereof, and any other firm or entity of whatsoever kind, nature or description.

22.     The term "document" as used herein shall mean every form of recording any form of communication (as defined above) or representation upon any tangible thing, including letters, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic, electronic transmission such as email text and other forms of electronic transmission, or by photographic means, magnetic impulse, tape, computer disk, and/or any other form of data storage, data compilation, or mechanical or electronic recording, and all other "documents" or "things" within the meaning of the Florida Rules of Civil Procedure.  Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

23.     The term "document" (defined above) applies to all information within your possession, custody, or control, including without limitation any attorney, accountant, or other agent or representative for you, as defined above.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or a copy of the document from any person or public or private entity having physical possession of the document.  Every draft, annotated version, or otherwise non-identical copy of a document is a separate document for the purposes of these requests.

24.     "Relating to," "referring to" or "regarding" a given subject matter shall be construed to include all documents or things embodying, comprising, referring to, constituting, containing, memorializing, evidencing, describing, reflecting, identifying, supporting, analyzing, discussing, mentioning, summarizing, stating, or pertaining in any way to, in whole or in part, the stated subject matter.

25.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside of its scope.

26.     The singular shall include the plural and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

27.     The past tense shall include the present tense and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

28.     If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce such document, please provide, at the time at which the other documents are produced, a log which sets forth, separately for each document not produced:  (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed, by any entity; (5) the identity and location of each person having or last having possession, care,

6

custody, or control of the document, and of each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you claim such a privilege or ground for your refusal to produce, in such detail as would be required for the undersigned to test the claim of privilege on a motion to compel.

29.     In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photographic or electrostatic duplicate of all written or printed material on the original file folder.  In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder.  The integrity and internal sequence of the requested documents within each folder shall not be disturbed.  Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

30.     If any document, or any part of a document, called for in any request has been destroyed, discarded, lost, or otherwise disposed of, or placed beyond your possession, custody, or control, or withheld, you are requested to provide a list setting forth each such document. Such list shall include identification of the author, recipient, date, and description of each document and an explanation of why the document is no longer in your possession, custody, or control.  With specific reference to destroyed, discarded or withheld documents, the list shall include whether the absence of the listed document was inadvertent or intentional, and, if the destruction was intentional, whether the destruction was part of a company or firm policy relating to the destruction of documents.

31.     Unless otherwise indicated, each individual request herein refers to documents which were prepared or created from 2015 until the date of these requests.

7

## **DOCUMENTS TO BE PRODUCED**

1.      Any documents identifying accounts at any financial institution, brokerage or any other entity which maintains funds or investments for any accounts for the Christian Rasch Group  or to which the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to ("The Accounts").

2.      Any documents of deposits to or transfers, disposition of or withdrawals from the Accounts.

3.      Any and all letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for all transactions, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts.

4.      Any and all records pertaining to the opening or establishment of the Accounts, including but not limited to internal bank documents, applications, resolutions, signature cards, financial statements, or similar documents submitted or considered for the purposes of opening the Accounts.

5.      All documents and communications reflecting, referring, or relating to the Real Estate Records of the Christian Rasch Group.

6.      Any and all records pertaining to accounts established and maintained by your institution for the Christian Rasch Group, or at another institution, as reflected by your records.

7.      Any and all loan applications, financial statements or similar documents related to, or submitted by or on behalf of the Christian Rasch Group.

8.      Any and all records signed by the Christian Rasch Group.

9.      Any and all correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Christian Rasch Group or to the Accounts, including any documents that relate to any Account activity or any inquiry or analysis into one or more of the Accounts or their activity.

10.      Any and all documents containing information concerning access to the Accounts at any time through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

11.      Any request or communications concerning changing or termination of the Accounts.

12.      Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

13.      Any records related to any safety deposit box or the use thereof.

14.       Any records related to investments, instructions to invest, or any other aspect of investment of funds.

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the requests listed below:

1.      "You," "Your" and/or "Morgan Stanley" means Morgan Stanley Bank, N.A., including any employee, agent, representative, accountant, or attorney for Morgan Stanley Bank, N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Morgan Stanley Bank, N.A.

2.      "BoA" means Bank of America N.A., including any employee, agent, representative, accountant, or attorney for Bank of America N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Bank of America N.A., including, but not limited to, BoA located at 800 Brickell Ave, Miami, Florida 33131.

3.      "Christian" means Christian Rasch, including any employee, agent, representative, family member, or attorney for Christian Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Christian Rasch.

4.      "Olaf" means Olaf Rasch, including any employee, agent, representative, or attorney for Olaf Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Olaf Rasch.

5.      "Allan" means Allan Rasch, including any employee, agent, representative, or attorney for Allan Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Allan Rasch.

1

6.     "Nadine" means Nadine Rasch, including any employee, agent, representative, or attorney for Nadine Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Nadine Rasch.

7.     "Alexandra" means Alexandra Rasch, including any employee, agent, representative, or attorney for Alexandra Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Alexandra Rasch.

8.     "Jacqueline" means Jacqueline Rasch, including any employee, agent, representative, or attorney for Jacqueline Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Jacqueline Rasch.

9.     "Mr. Feuerman" means Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, including any partner, employee, agent, representative, or attorney for Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP.

10.     "Multiflora" means Multiflora International Ltd., including any employee, agent, representative, accountant, or attorney for Multiflora International Ltd., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Multiflora International Ltd.

11.     "Entre Ríos" means Agrícola Industrial Entre Ríos, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Industrial Entre Ríos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Industrial Entre Ríos, S.A.

12.     "Esperanza Jacobi" means Agrícola Esperanza Jacobi, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Esperanza Jacobi, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Esperanza Jacobi, S.A.

13.     "Jacobi International" means Jacobi International, Inc., including any employee, agent, representative, accountant, or attorney for Jacobi International, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jacobi International, Inc.

14.     "Cart Investments" means Cart Investments, Inc., including any employee, agent, representative, accountant, or attorney for Cart Investments, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Cart Investments.

15.     "QB Inversiones, S.A" means QB Inversiones, S.A., including any partner, employee, agent, representative, or attorney for QB Inversiones, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of QB Inversiones, S.A.

16.     "J Dos, S.A."  means J Dos, S.A., including any partner, employee, agent, representative, or attorney for J Dos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of J Dos, S.A.

17.     "The Christian Rasch Group" means and includes any or all of the following individuals, as well as their representatives, agents, employees, and attorneys:

     a)  Christian;
     b)  Nadine;
     c)  Alexandra;

    d)  Jacqueline;

    e)  Mr. Feuerman;

    f)  Multiflora;

    g)  Entre Ríos;

    h)  Esperanza Jacobi;

    i)  Jacobi International;

    j)  Cart Investments;

    k)  QB Inversiones, S.A.; or

    l)  J Dos, S.A.

18.    "Accounts" means any account, including but not limited to personal, business, checking, money market, securities, credit, loans, safety deposit boxes, certificates of deposit, annuity, 401k, brokerage, or savings accounts related to the Christian Rasch Group, including but not limited to BoA account number xxxx xxxx 6158 or Morgan Stanley account number AAA—9489.

19.    "Real Estate Records" means all records related to the acquisition, purchase, sale or transfer of real property, including but not limited to sales contracts, appraisals, deeds, security deeds, applications for financing or mortgages, loan applications, financing or mortgages, closing statements, leases, title documents, Title search  and/or report, title insurance, property insurance, property taxes, communications with real estate agents, commissions, settlement statement, records of any deposit, closing costs, real estate brochures or marketing documents regarding the property, any sources of funds such as bank or brokerage accounts, lines of credit, loans, transfers or other sources of funding.

20.    The term "communication" shall mean any conversation, discussion, letter, memorandum, note, e-mail, voice mail, text, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which

4

abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

21.     The term "person" shall mean and refer to the plural as well as the singular of, and includes without limitation, any natural person, partnership, joint venture, association, union, trust, corporation, firm, legal or governmental entity, any division, department or other unit thereof, and any other firm or entity of whatsoever kind, nature or description.

22.     The term "document" as used herein shall mean every form of recording any form of communication (as defined above) or representation upon any tangible thing, including letters, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic, electronic transmission such as email text and other forms of electronic transmission, or by photographic means, magnetic impulse, tape, computer disk, and/or any other form of data storage, data compilation, or mechanical or electronic recording, and all other "documents" or "things" within the meaning of the Florida Rules of Civil Procedure.  Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

23.     The term "document" (defined above) applies to all information within your possession, custody, or control, including without limitation any attorney, accountant, or other agent or representative for you, as defined above.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or a copy of the document from any person or public or private entity having physical possession of the document.  Every draft, annotated version, or otherwise non-identical copy of a document is a separate document for the purposes of these requests.

24.     "Relating to," "referring to" or "regarding" a given subject matter shall be construed to include all documents or things embodying, comprising, referring to, constituting, containing, memorializing, evidencing, describing, reflecting, identifying, supporting, analyzing, discussing, mentioning, summarizing, stating, or pertaining in any way to, in whole or in part, the stated subject matter.

25.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside of its scope.

26.     The singular shall include the plural and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

27.     The past tense shall include the present tense and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

28.     If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce such document, please provide, at the time at which the other documents are produced, a log which sets forth, separately for each document not produced:  (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed, by any entity; (5) the identity and location of each person having or last having possession, care,

custody, or control of the document, and of each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you claim such a privilege or ground for your refusal to produce, in such detail as would be required for the undersigned to test the claim of privilege on a motion to compel.

29.     In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photographic or electrostatic duplicate of all written or printed material on the original file folder.  In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder.  The integrity and internal sequence of the requested documents within each folder shall not be disturbed.  Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

30.     If any document, or any part of a document, called for in any request has been destroyed, discarded, lost, or otherwise disposed of, or placed beyond your possession, custody, or control, or withheld, you are requested to provide a list setting forth each such document. Such list shall include identification of the author, recipient, date, and description of each document and an explanation of why the document is no longer in your possession, custody, or control.  With specific reference to destroyed, discarded or withheld documents, the list shall include whether the absence of the listed document was inadvertent or intentional, and, if the destruction was intentional, whether the destruction was part of a company or firm policy relating to the destruction of documents.

31.     Unless otherwise indicated, each individual request herein refers to documents which were prepared or created from since the Accounts were opened and until the date of these requests.

## DOCUMENTS TO BE PRODUCED

1.      Any documents identifying accounts at any financial institution, brokerage or any other entity which maintains funds or investments for any accounts for the Christian Rasch Group  or to which the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to ("The Accounts").

2.      Any documents of deposits to or transfers, disposition of or withdrawals from the Accounts.

3.      Any documents of transfers from the Accounts to Caban Systems and/or QB Inversiones, S.A.

4.      Any and all letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for all transactions, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts.

5.      Any and all records pertaining to the opening or establishment of the Accounts, including but not limited to internal bank documents, applications, resolutions, signature cards, financial statements, or similar documents submitted or considered for the purposes of opening the Accounts.

8

6.      All documents and communications reflecting, referring, or relating to the Real Estate Records of the Christian Rasch Group.

7.      Any and all records pertaining to accounts established and maintained by your institution for the Christian Rasch Group, or at another institution, as reflected by your records.

8.      Any and all loan applications, financial statements or similar documents related to, or submitted by or on behalf of the Christian Rasch Group.

9.      Any and all records signed by the Christian Rasch Group.

10.     Any and all correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Christian Rasch Group or to the Accounts, including any documents that relate to any Account activity or any inquiry or analysis into one or more of the Accounts or their activity.

11.     Any and all documents containing information concerning access to the Accounts at any time through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

12.     Any request or communications concerning changing or termination of the Accounts.

13.     Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

14.     Any records related to any safety deposit box or the use thereof.

15.      Any records related to investments, instructions to invest, or any other aspect of investment of funds.

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

In Re: Application of Multiflora International LTD., et al.

|  |  |  |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Jacobi International, Inc. c/o Jonathan Feuerman, Registered Agent
Sun Trust International Center, One SE 3rd Ave, Suite 2400 Miami, FL  33131

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Exhibit A.

| Place: To be specified upon the court granting leave to issue the subpoena. | Date and Time: To be specified upon the court granting leave to issue the subpoena. |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  10/13/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | s/Rafael R. Ribeiro |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Multiflora International Ltd.,Agrícola Esperanza Jacobi, S.A., Agrícola Esperanza Jacobi, S.A. , who issues or requests this subpoena, are:
Marty Steinberg, Rafael R. Ribeiro, Richard C. Lorenzo, Hogan Lovells US LLP,  600 Brickell Avenue, Suite 2700, Miami, FL.  33131,
Tel: (305) 459-6500. Email: marty.steinberg@hoganlovells.com, rafael.ribeiro@hoganlovells.com, richard.lorenzo@hoganlovells.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

## <u>DEFINITIONS AND INSTRUCTIONS</u>

The following definitions and instructions apply to the requests listed below:

1.      "You," "Your" and/or "Jacobi International" means Jacobi International, Inc., including any employee, agent, representative, accountant, or attorney for Jacobi International, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jacobi International, Inc.

2.      "Cart Investments" means Cart Investments, Inc., including any employee, agent, representative, accountant, or attorney for Cart Investments, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Cart Investments.

3.      "BoA" means Bank of America N.A., including any employee, agent, representative, accountant, or attorney for Bank of America N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Bank of America N.A., including, but not limited to, the BoA branch located at 800 Brickell Ave, Miami, Florida 33131.

4.      "Christian" means Christian Rasch, including any employee, agent, representative, family member, or attorney for Christian Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Christian Rasch.

5.      "Olaf" means Olaf Rasch, including any employee, agent, representative, or attorney for Olaf Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Olaf Rasch.

1

6.      "Allan" means Allan Rasch, including any employee, agent, representative, or attorney for Allan Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Allan Rasch.

7.      "Nadine" means Nadine Rasch, including any employee, agent, representative, or attorney for Nadine Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Nadine Rasch.

8.      "Alexandra" means Alexandra Rasch, including any employee, agent, representative, or attorney for Alexandra Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Alexandra Rasch.

9.      "Jacqueline" means Jacqueline Rasch, including any employee, agent, representative, or attorney for Jacqueline Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Jacqueline Rasch.

10.     "Mr. Feuerman" means Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, including any partner, employee, agent, representative, or attorney for Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP.

11.     "Multiflora" means Multiflora International Ltd., including any employee, agent, representative, accountant, or attorney for Multiflora International Ltd., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Multiflora International Ltd.

12.     "Entre Ríos" means Agrícola Industrial Entre Ríos, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Industrial Entre Ríos, S.A., and any

2

other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Industrial Entre Ríos, S.A.

13.     "Esperanza Jacobi" means Agrícola Esperanza Jacobi, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Esperanza Jacobi, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Esperanza Jacobi, S.A.

14.     "QB Inversiones, S.A." means QB Inversiones, S.A., including any partner, employee, agent, representative, or attorney for QB Inversiones, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of QB Inversiones, S.A.

15.     "J Dos, S.A."  means J Dos, S.A., including any partner, employee, agent, representative, or attorney for J Dos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of J Dos, S.A.

16.     "Morgan Stanley" means collectively Morgan Stanley Bank, N.A., including any employee, agent, representative, accountant, or attorney for Morgan Stanley Bank, N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Morgan Stanley Bank, N.A.

17.     "The Christian Rasch Group" means and includes any or all of the following individuals, as well as their representatives, agents, employees, and attorneys:

1. Christian;
2. Nadine;
3. Alexandra;
4. Jacqueline;
5. Mr. Feuerman;
6. Multiflora;

3

    7.  Entre Ríos;

    8.  Esperanza Jacobi;

    9.  Jacobi International;

    10. Cart Investments;

    11. QB Inversiones, S.A.; or

    12. J Dos, S.A.

18.    "Accounts" means any account, including but not limited to personal, business, checking, money market, securities, credit, loans, safety deposit boxes, certificates of deposit, annuity, 401k, brokerage, or savings accounts related to the Christian Rasch Group,  including but not limited to BoA account number xxxx xxxx 6158 or Morgan Stanley account number AAA—9489.

19.    "Real Estate Records" means all records related to the acquisition, purchase, sale or transfer of real property, including but not limited to sales contracts, appraisals, deeds, security deeds, applications for financing or mortgages, loan applications, financing or mortgages, closing statements, leases, title documents, Title search  and/or report, title insurance, property insurance, property taxes, communications with real estate agents, commissions, settlement statement, records of any deposit, closing costs, real estate brochures or marketing documents regarding the property, any sources of funds such as bank or brokerage accounts, lines of credit, loans, transfers or other sources of funding.

20.    The term "communication" shall mean any conversation, discussion, letter, memorandum, note, e-mail, voice mail, text, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

4

21.     The term "person" shall mean and refer to the plural as well as the singular of, and includes without limitation, any natural person, partnership, joint venture, association, union, trust, corporation, firm, legal or governmental entity, any division, department or other unit thereof, and any other firm or entity of whatsoever kind, nature or description.

22.     The term "document" as used herein shall mean every form of recording any form of communication (as defined above) or representation upon any tangible thing, including letters, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic, electronic transmission such as email text and other forms of electronic transmission, or by photographic means, magnetic impulse, tape, computer disk, and/or any other form of data storage, data compilation, or mechanical or electronic recording, and all other "documents" or "things" within the meaning of the Florida Rules of Civil Procedure.  Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

23.     The term "document" (defined above) applies to all information within your possession, custody, or control, including without limitation any attorney, accountant, or other agent or representative for you, as defined above.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or a copy of the document from any person or public or private entity having physical possession of the document.  Every draft, annotated version, or otherwise non-identical copy of a document is a separate document for the purposes of these requests.

24.      "Relating to," "referring to" or "regarding" a given subject matter shall be construed to include all documents or things embodying, comprising, referring to, constituting, containing, memorializing, evidencing, describing, reflecting, identifying, supporting, analyzing,

discussing, mentioning, summarizing, stating, or pertaining in any way to, in whole or in part, the stated subject matter.

25.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside of its scope.

26.     The singular shall include the plural and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

27.     The past tense shall include the present tense and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

28.     If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce such document, please provide, at the time at which the other documents are produced, a log which sets forth, separately for each document not produced:  (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed, by any entity; (5) the identity and location of each person having or last having possession, care, custody, or control of the document, and of each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you

claim such a privilege or ground for your refusal to produce, in such detail as would be required for the undersigned to test the claim of privilege on a motion to compel.

29.    In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photographic or electrostatic duplicate of all written or printed material on the original file folder.  In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder.  The integrity and internal sequence of the requested documents within each folder shall not be disturbed.  Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

30.    If any document, or any part of a document, called for in any request has been destroyed, discarded, lost, or otherwise disposed of, or placed beyond your possession, custody, or control, or withheld, you are requested to provide a list setting forth each such document. Such list shall include identification of the author, recipient, date, and description of each document and an explanation of why the document is no longer in your possession, custody, or control.  With specific reference to destroyed, discarded or withheld documents, the list shall include whether the absence of the listed document was inadvertent or intentional, and, if the destruction was intentional, whether the destruction was part of a company or firm policy relating to the destruction of documents.

31.    Unless otherwise indicated, each individual request herein refers to documents which were prepared or created from 2015 until the date of these requests.

## DOCUMENTS TO BE PRODUCED

1.    All documents and communications that demonstrate, evidence, or indicate the corporate structure and management of Jacobi International, including but not limited to:

7

      a.   The identity of its officers, directors, and employees;

      b.   The identity and nature of any persons or business entities that are parents, subsidiaries, or affiliates of Jacobi International.

2.      All documents and communications that demonstrate, evidence, or indicate the extent and nature of any ownership, financial, or other interests in Jacobi International by third persons or business entities, including but not limited to:

      a.   The identity of its current and past shareholders, as well as the identity of any other person who has, or has had, a financial or any other kind of interest in Jacobi International; and

      b.   Any transfers of ownership, control, or possession of any interest in Jacobi International by any third person or entity.

3.      All documents and communications that demonstrate, evidence, or indicate the extent and nature of the financial or other interest that the Christian Rasch Group has, or had, in Jacobi International, including but not limited to, any of the Christian Rasch Group's share capital and stock certificates in Jacobi International, whether owned individually or jointly with any third person.

4.      All documents and communications concerning the Christian Rasch Group's financial or other interest in Jacobi International.

5.      Any documents of transfers from the Accounts to Sanacaj, S.A.

6.      All documents and communications relating to the extent and nature of any assets received by the Christian Rasch Group, directly or indirectly, from Jacobi International, or vice versa, including but not limited to, any dividends, capital distributions, salary, or other payment.

8

7.      All financial, business, and property records of Jacobi International and all other papers, record books, and documents which tend to disclose the extent and nature of the financial interests, property, and assets of Jacobi International.

8.      All documents relating to the domestic or foreign bank accounts of Jacobi International, including all information relating to its savings accounts and checking accounts, whether owned independently or jointly with any third person.

9.      All documents and records relating to investments of any type by Jacobi International, both domestically and abroad.

10.     Copies of deeds to all real property that Jacobi International, owned either independently, or jointly with any third person, both domestically and abroad.

11.     All documents and communications reflecting, referring, or relating to the Real Estate Records of you and/or the Christian Rasch Group.

12.     Any and all records pertaining to accounts established and maintained by your institution for you and/or the Christian Rasch Group or at another institution, as reflected by your records.

13.     Any and all loans and loans applications, financial statements or similar documents related to, or submitted by or on behalf of you and/or the Christian Rasch Group.

14.     Any and all records signed by you and/or the Christian Rasch Group.

15.     All financial, business, and property records reflecting, referring, or relating to you and/or the Christian Rasch Group.

16.     Any documents identifying any deposits to or withdrawals from the Accounts, which were transferred to or from you and/or the Christian Rasch Group or to or from any account in which you and/or the Christian Rasch Group has had an interest, or to which you

9

and/or the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to, the account or information pertaining to the account.

17.     Any and all letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for all transactions, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts.

18.     Any and all records pertaining to the opening or establishment of the Accounts, including but not limited to internal bank documents, applications, resolutions, signature cards, financial statements, or similar documents submitted or considered for the purposes of opening the Accounts.

19.     Any and all correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Christian Rasch Group or to the Accounts, including any documents that relate to any Account activity or any inquiry or analysis into one or more of the Accounts or their activity.

20.     Any and all documents containing information concerning access to the Accounts at any time through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

21.     Any request or communications concerning changing or termination of the Accounts.

22.     Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

23.     Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

24.     Any records related to investments, instructions to invest, or any other aspect of investment of funds.

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

In Re: Application of Multiflora International LTD., et al.

|                           |   |                   |
|---------------------------|---|-------------------|
| _Plaintiff_               | ) |                   |
| v.                        | ) | Civil Action No.  |
|                           | ) |                   |
| _Defendant_               | ) |                   |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Cart Investments, Inc. c/o Jacobi International, Inc., Registered Agent
3400 NW 74 Ave, Miami, FL 33122

_(Name of person to whom this subpoena is directed)_

✄ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Exhibit A.

| Place: To be specified upon the court granting leave to issue the subpoena. | Date and Time:<br>To be specified upon the court granting leave to issue the subpoena. |
|---|---|

❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   10/13/2020

_CLERK OF COURT_

OR

_____          s/Rafael R. Ribeiro
_Signature of Clerk or Deputy Clerk_              _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Multiflora International Ltd.,Agrícola Esperanza Jacobi, S.A., Agrícola Esperanza Jacobi, S.A. , who issues or requests this subpoena, are:
Marty Steinberg, Rafael R. Ribeiro, Richard C. Lorenzo, Hogan Lovells US LLP, 600 Brickell Avenue, Suite 2700, Miami, FL. 33131, Tel: (305) 459-6500. Email: marty.steinberg@hoganlovells.com, rafael.ribeiro@hoganlovells.com, richard.lorenzo@hoganlovells.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the requests listed below:

1.      "You," "Your" and/or "Cart Investments" means Cart Investments, Inc., including any employee, agent, representative, accountant, or attorney for Cart Investments, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Cart Investments.

2.      "BoA" means Bank of America N.A., including any employee, agent, representative, accountant, or attorney for Bank of America N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Bank of America N.A., including but not limited to BoA located at 800 Brickell Ave, Miami, Florida 33131.

3.      "Christian" means Christian Rasch, including any employee, agent, representative, family member, or attorney for Christian Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Christian Rasch.

4.      "Olaf" means Olaf Rasch, including any employee, agent, representative, or attorney for Olaf Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Olaf Rasch.

5.      "Allan" means Allan Rasch, including any employee, agent, representative, or attorney for Allan Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Allan Rasch.

1

6.      "Nadine" means Nadine Rasch, including any employee, agent, representative, or attorney for Nadine Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Nadine Rasch.

7.      "Alexandra" means Alexandra Rasch, including any employee, agent, representative, or attorney for Alexandra Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Alexandra Rasch.

8.      "Jacqueline" means Jacqueline Rasch, including any employee, agent, representative, or attorney for Jacqueline Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Jacqueline Rasch.

9.      "Mr. Feuerman" means Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, including any partner, employee, agent, representative, or attorney for Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP.

10.      "Multiflora" means Multiflora International Ltd., including any employee, agent, representative, accountant, or attorney for Multiflora International Ltd., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Multiflora International Ltd.

11.      "Entre Ríos" means Agrícola Industrial Entre Ríos, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Industrial Entre Ríos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Industrial Entre Ríos, S.A.

2

12.     "Esperanza Jacobi" means Agrícola Esperanza Jacobi, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Esperanza Jacobi, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Esperanza Jacobi, S.A.

13.     "Jacobi International" means Jacobi International, Inc., including any employee, agent, representative, accountant, or attorney for Jacobi International, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jacobi International, Inc.

14.     "QB Inversiones, S.A." means QB Inversiones, S.A., including any partner, employee, agent, representative, or attorney for QB Inversiones, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of QB Inversiones, S.A.

15.     "J Dos, S.A."  means J Dos, S.A., including any partner, employee, agent, representative, or attorney for J Dos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of J Dos, S.A.

16.     "Morgan Stanley" means collectively Morgan Stanley Bank, N.A., including any employee, agent, representative, accountant, or attorney for Morgan Stanley Bank, N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Morgan Stanley Bank, N.A.

17.     "The Christian Rasch Group" means and includes any or all of the following individuals, as well as their representatives, agents, employees, and attorneys:

1. Christian;
2. Nadine;
3. Alexandra;

3

    4.   Jacqueline;

    5.   Mr. Feuerman;

    6.   Multiflora;

    7.   Entre Ríos;

    8.   Esperanza Jacobi;

    9.   Jacobi International;

    10. Cart Investments;

    11. QB Inversiones, S.A.; or

    12. J Dos, S.A.

18.     "Accounts" means any account, including but not limited to personal, business, checking, money market, securities, credit, loans, safety deposit boxes, certificates of deposit, annuity, 401k, brokerage, or savings accounts related to the Christian Rasch Group, including but not limited to BoA account number xxxx xxxx 6158 or Morgan Stanley account number AAA—9489.

19.     "Real Estate Records" means all records related to the acquisition, purchase, sale or transfer of real property, including but not limited to sales contracts, appraisals, deeds, security deeds, applications for financing or mortgages, loan applications, financing or mortgages, closing statements, leases, title documents, Title search and/or report, title insurance, property insurance, property taxes, communications with real estate agents, commissions, settlement statement, records of any deposit, closing costs, real estate brochures or marketing documents regarding the property, any sources of funds such as bank or brokerage accounts, lines of credit, loans, transfers or other sources of funding.

20.     The term "communication" shall mean any conversation, discussion, letter, memorandum, note, e-mail, voice mail, text, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which

4

abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

21.     The term "person" shall mean and refer to the plural as well as the singular of, and includes without limitation, any natural person, partnership, joint venture, association, union, trust, corporation, firm, legal or governmental entity, any division, department or other unit thereof, and any other firm or entity of whatsoever kind, nature or description.

22.     The term "document" as used herein shall mean every form of recording any form of communication (as defined above) or representation upon any tangible thing, including letters, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic, electronic transmission such as email text and other forms of electronic transmission, or by photographic means, magnetic impulse, tape, computer disk, and/or any other form of data storage, data compilation, or mechanical or electronic recording, and all other "documents" or "things" within the meaning of the Florida Rules of Civil Procedure.  Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

23.     The term "document" (defined above) applies to all information within your possession, custody, or control, including without limitation any attorney, accountant, or other agent or representative for you, as defined above.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or a copy of the document from any person or public or private entity having physical possession of the document.  Every draft, annotated version, or otherwise non-identical copy of a document is a separate document for the purposes of these requests.

24.    "Relating to," "referring to" or "regarding" a given subject matter shall be construed to include all documents or things embodying, comprising, referring to, constituting, containing, memorializing, evidencing, describing, reflecting, identifying, supporting, analyzing, discussing, mentioning, summarizing, stating, or pertaining in any way to, in whole or in part, the stated subject matter.

25.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside of its scope.

26.    The singular shall include the plural and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

27.    The past tense shall include the present tense and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

28.    If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce such document, please provide, at the time at which the other documents are produced, a log which sets forth, separately for each document not produced:  (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed, by any entity; (5) the identity and location of each person having or last having possession, care,

custody, or control of the document, and of each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you claim such a privilege or ground for your refusal to produce, in such detail as would be required for the undersigned to test the claim of privilege on a motion to compel.

29.     In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photographic or electrostatic duplicate of all written or printed material on the original file folder.  In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder.  The integrity and internal sequence of the requested documents within each folder shall not be disturbed.  Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

30.     If any document, or any part of a document, called for in any request has been destroyed, discarded, lost, or otherwise disposed of, or placed beyond your possession, custody, or control, or withheld, you are requested to provide a list setting forth each such document. Such list shall include identification of the author, recipient, date, and description of each document and an explanation of why the document is no longer in your possession, custody, or control.  With specific reference to destroyed, discarded or withheld documents, the list shall include whether the destruction of the listed document was inadvertent or intentional, and, if the destruction was intentional, whether the absence was part of a company or firm policy relating to the destruction of documents.

31.     Unless otherwise indicated, each individual request herein refers to documents which were prepared or created from 2015 until the date of these requests.

7

## **DOCUMENTS TO BE PRODUCED**

1.      All documents and communications that demonstrate, evidence, or indicate the corporate structure and management of Cart Investments, including but not limited to:

      a.   The identity of its officers, directors, and employees;

      b.   The identity and nature of any persons or business entities that are parents, subsidiaries, or affiliates of Cart Investments.

2.      All documents and communications that demonstrate, evidence, or indicate the extent and nature of any ownership, financial, or other interests in Cart Investments by third persons or business entities, including but not limited to:

      a.   The identity of its current and past shareholders, as well as the identity of any other person who has, or has had, a financial or any other kind of interest in Cart Investments; and

      b.   Any transfers of ownership, control, or possession of any interest in Cart Investments by any third person or entity.

3.      All documents and communications that demonstrate, evidence, or indicate the extent and nature of the financial or other interest that the Christian Rasch Group has, or had, in Cart Investments, including but not limited to, any of the Christian Rasch Group's share capital and stock certificates in Cart Investments, whether owned individually or jointly with any third person.

4.      All documents and communications concerning the Christian Rasch Group's financial or other interest in Cart Investments.

5.      All documents and communications relating to the extent and nature of any assets received by the Christian Rasch Group, directly or indirectly, from Cart Investments, or vice versa, including but not limited to, any dividends, capital distributions, salary, or other payment.

6.      All financial, business, and property records of Cart Investments and all other papers, record books, and documents which tend to disclose the extent and nature of the financial interests, property, and assets of Cart Investments.

7.      All documents relating to the domestic or foreign bank accounts of Cart Investments, including all information relating to its savings accounts and checking accounts, whether owned independently or jointly with any third person.

8.      All documents and records relating to investments of any type by Cart Investments, both domestically and abroad.

9.      Copies of deeds to all real property that Cart Investments, owned either independently, or jointly with any third person, both domestically and abroad.

10.      All documents and communications reflecting, referring, or relating to the Real Estate Records of you and/or the Christian Rasch Group.

11.      Any and all records pertaining to accounts established and maintained by your institution for you and/or the Christian Rasch Group, or at another institution, as reflected by your records.

12.      Any and all loan applications, financial statements or similar documents related to, or submitted by or on behalf of you and/or the Christian Rasch Group.

13.      Any and all documents or communications related to loans received by any bank or third party.

14.     Any and all documents or communications related to the outstanding balance of any loan received by any bank or third party.

15.     Any and all records signed by you and/or the Christian Rasch Group.

16.     All financial, business, and property records reflecting, referring, or relating to you and/or the Christian Rasch Group.

17.     Any documents identifying any deposits to or withdrawals from the Accounts, which were transferred to or from you and/or the Christian Rasch Group or to or from any account in which you and/or the Christian Rasch Group has had an interest, or to which you and/or the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to, the account or information pertaining to the account.

18.     Any and all letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for all transactions, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts.

19.     Any and all records pertaining to the opening or establishment of the Accounts, including but not limited to internal bank documents, applications, resolutions, signature cards, financial statements, or similar documents submitted or considered for the purposes of opening the Accounts.

20.     Any and all correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the

10

Christian Rasch Group or to the Accounts, including any documents that relate to any Account activity or any inquiry or analysis into one or more of the Accounts or their activity.

21.      Any and all documents containing information concerning access to the Accounts at any time through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

22.      Any request or communications concerning changing or termination of the Accounts.

23.      Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

24.      Any records related to any safety deposit box or the use thereof.

25.      Any records related to investments, instructions to invest, or any other aspect of investment of funds.

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

In Re: Application of Multiflora International LTD., et al.

|  |  |
|---|---|
| _____ ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. |
| _____ ) | |
| *Defendant* ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Jonathan Feuerman, Esq., Therrel Baisden, LLP
1 SE 3rd Avenue, Suite 2950, Miami, FL  33131

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Exhibit A.

| Place: To be specified upon the court granting leave to issue the subpoena. | Date and Time: To be specified upon the court granting leave to issue the subpoena. |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/13/2020

|     *CLERK OF COURT*     |  | |
|---|---|---|
| | OR | |
| _____ | | *s/Rafael R. Ribeiro* |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Multiflora International Ltd.,Agrícola Esperanza Jacobi, S.A., Agrícola Esperanza Jacobi, S.A.              , who issues or requests this subpoena, are:
Marty Steinberg, Rafael R. Ribeiro, Richard C. Lorenzo, Hogan Lovells US LLP,  600 Brickell Avenue, Suite 2700, Miami, FL.  33131,
Tel: (305) 459-6500. Email: marty.steinberg@hoganlovells.com, rafael.ribeiro@hoganlovells.com, richard.lorenzo@hoganlovells.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
        **(i)** is a party or a party's officer; or
        **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        **(i)** fails to allow a reasonable time to comply;
        **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
        **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

        **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        **(i)** expressly make the claim; and
        **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the requests listed below:

1.      "You," "Your" and/or "Mr. Feuerman" means Jonathan Feuerman, Esquire, of the law firm of Therrel Baisden, LLP, including any partner, employee, agent, representative, or attorney for Mr. Feuerman, and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Mr. Feuerman of the law firm of Therrel Baisden, LLP.

2.      Cart Investments" means Cart Investments, Inc., including any employee, agent, representative, accountant, or attorney for Cart Investments, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Cart Investments.

3.      "BoA" means Bank of America N.A., including any employee, agent, representative, accountant, or attorney for Bank of America N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Bank of America N.A., including, but not limited to, the BoA branch located at 800 Brickell Ave, Miami, Florida 33131.

4.      "Christian" means Christian Rasch, including any employee, agent, representative, family member, or attorney for Christian Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Christian Rasch.

5.      "Olaf" means Olaf Rasch, including any employee, agent, representative, or attorney for Olaf Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Olaf Rasch.

1

6.  "Allan" means Allan Rasch, including any employee, agent, representative, or attorney for Allan Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Allan Rasch.

7.  "Nadine" means Nadine Rasch, including any employee, agent, representative, or attorney for Nadine Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Nadine Rasch.

8.  "Alexandra" means Alexandra Rasch, including any employee, agent, representative, or attorney for Alexandra Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Alexandra Rasch.

9.  "Jacqueline" means Jacqueline Rasch, including any employee, agent, representative, or attorney for Jacqueline Rasch, and any other person or entity acting for or on behalf of, or under the authority and control of Jacqueline Rasch.

10.  "Multiflora" means Multiflora International Ltd., including any employee, agent, representative, accountant, or attorney for Multiflora International Ltd., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Multiflora International Ltd.

11.  "Entre Ríos" means Agrícola Industrial Entre Ríos, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Industrial Entre Ríos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Industrial Entre Ríos, S.A.

12.  "Esperanza Jacobi" means Agrícola Esperanza Jacobi, S.A., including any employee, agent, representative, accountant, or attorney for Agrícola Esperanza Jacobi, S.A., and

2

any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Agrícola Esperanza Jacobi, S.A.

13.    "Jacobi International" means Jacobi International, Inc., including any employee, agent, representative, accountant, or attorney for Jacobi International, Inc., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Jacobi International, Inc.

14.    "QB Inversiones, S.A." means QB Inversiones, S.A., including any partner, employee, agent, representative, or attorney for QB Inversiones, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of QB Inversiones, S.A.

15.    "J Dos, S.A."   means J Dos, S.A., including any partner, employee, agent, representative, or attorney for J Dos, S.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of J Dos, S.A.

16.    "Morgan Stanley" means collectively Morgan Stanley Bank, N.A., including any employee, agent, representative, accountant, or attorney for Morgan Stanley Bank, N.A., and any other person, entity, successor, predecessor, or affiliate acting for or on behalf of, or under the authority and control of Morgan Stanley Bank, N.A.

17.    "The Christian Rasch Group" means and includes any or all of the following individuals, as well as their representatives, agents, employees, and attorneys:

1.  Christian;
2.  Nadine;
3.  Alexandra;
4.  Jacqueline;
5.  Mr. Feuerman;
6.  Multiflora;

3

7.  Entre Ríos;

8.  Esperanza Jacobi;

9.  Jacobi International;

10. Cart Investments;

11. QB Inversiones, S.A.; or

12. J Dos, S.A.

18.    "Accounts" means any account, including but not limited to personal, business, checking, money market, securities, credit, loans, safety deposit boxes, certificates of deposit, annuity, 401k, brokerage, or savings accounts related to Rasch et al., including but not limited to BoA account number xxxx xxxx 6158 or Morgan Stanley account number account number AAA—9489.

19.    "Real Estate Records" means all records related to the acquisition, purchase, sale or transfer of real property, including but not limited to sales contracts, appraisals, deeds, security deeds, applications for financing or mortgages, loan applications, financing or mortgages, closing statements, leases, title documents, Title search  and/or report, title insurance, property insurance, property taxes, communications with real estate agents, commissions, settlement statement, records of any deposit, closing costs, real estate brochures or marketing documents regarding the property, any sources of funds such as bank or brokerage accounts, lines of credit, loans, transfers or other sources of funding.

20.    The term "communication" shall mean any conversation, discussion, letter, memorandum, note, e-mail, voice mail, text, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

21.     The term "person" shall mean and refer to the plural as well as the singular of, and includes without limitation, any natural person, partnership, joint venture, association, union, trust, corporation, firm, legal or governmental entity, any division, department or other unit thereof, and any other firm or entity of whatsoever kind, nature or description.

22.     The term "document" as used herein shall mean every form of recording any form of communication (as defined above) or representation upon any tangible thing, including letters, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic, electronic transmission such as email text and other forms of electronic transmission, or by photographic means, magnetic impulse, tape, computer disk, and/or any other form of data storage, data compilation, or mechanical or electronic recording, and all other "documents" or "things" within the meaning of the Florida Rules of Civil Procedure.  Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

23.     The term "document" (defined above) applies to all information within your possession, custody, or control, including without limitation any attorney, accountant, or other agent or representative for you, as defined above.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or a copy of the document from any person or public or private entity having physical possession of the document.  Every draft, annotated version, or otherwise non-identical copy of a document is a separate document for the purposes of these requests.

24.      "Relating to," "referring to" or "regarding" a given subject matter shall be construed to include all documents or things embodying, comprising, referring to, constituting, containing, memorializing, evidencing, describing, reflecting, identifying, supporting, analyzing,

discussing, mentioning, summarizing, stating, or pertaining in any way to, in whole or in part, the stated subject matter.

25.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside of its scope.

26.     The singular shall include the plural and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

27.     The past tense shall include the present tense and vice versa, as necessary, to bring within the scope of the request for production all responses that might otherwise be construed to be outside its scope.

28.     If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce such document, please provide, at the time at which the other documents are produced, a log which sets forth, separately for each document not produced:  (1) the identity of the author thereof, the parties thereto, and any person who helped in the preparation of the document; (2) the title or other identifying data sufficient to describe the document for purposes of a subpoena duces tecum; (3) the date of the document, or if no date appears thereon, the approximate date; (4) the identity of each person to whom the document, or any copy thereof, was transmitted, shown, or disclosed, by any entity; (5) the identity and location of each person having or last having possession, care, custody, or control of the document, and of each of any copies thereof; (6) the purpose for which the document was prepared; (7) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; and (8) each and every fact or basis on which you

claim such a privilege or ground for your refusal to produce, in such detail as would be required

for the undersigned to test the claim of privilege on a motion to compel.

29.     In producing the documents and writings requested herein, please produce them in

their original file folders, if any, or in lieu thereof, attach to the set of documents produced from

a given file a photographic or electrostatic duplicate of all written or printed material on the

original file folder.  In addition, the documents shall be produced in the same sequence as they

are contained or found in the original file folder.  The integrity and internal sequence of the

requested documents within each folder shall not be disturbed.  Under no circumstances shall

documents from any file folder be commingled with documents from any other file folder.

30.     If any document, or any part of a document, called for in any request has been

destroyed, discarded, lost, or otherwise disposed of, or placed beyond your possession, custody,

or control, or withheld, you are requested to provide a list setting forth each such document.

Such list shall include identification of the author, recipient, date, and description of each

document and an explanation of why the document is no longer in your possession, custody, or

control.  With specific reference to destroyed, discarded or withheld documents, the list shall

include whether the absence of the listed document was inadvertent or intentional, and, if the

destruction was intentional, whether the destruction was part of a company or firm policy

relating to the destruction of documents.

31.     Unless otherwise indicated, each individual request herein refers to documents

which were prepared or created from 2015 until the date of these requests.

## **DOCUMENTS TO BE PRODUCED**

1.     All documents and communications related to the financial, business, and

 property  records  of  Cart  Investments,  Jacobi  International,  QB  Inversiones,  S.A.,  Caban

Systems, or J Dos, S.A., and all other papers, record books, and documents which tend to disclose the extent and nature of the financial interests, property, and assets of Cart Investments, Jacobi International, QB Inversiones, S.A., Caban Systems or J Dos, S.A..

2.      All documents and communications related to ownership of Cart Investments, Jacobi International, QB Inversiones, S.A., Caban Systems, or J Dos, S.A., including, but not limited to, the shareholders registry.

3.      All documents and communications relating to the domestic or foreign bank accounts of Cart Investments, Jacobi International, QB Inversiones, S.A., or J Dos, S.A., including all information relating to its savings accounts and checking accounts, whether owned independently or jointly with any third person.

4.      All documents and records relating to investments of any type by Cart Investments, Jacobi International, QB Inversiones, S.A., or J Dos, S.A., both domestically and abroad.

5.      Copies of deeds to all real property that Cart Investments, Jacobi International, QB Inversiones, S.A., or J Dos, S.A., owned either independently, or jointly with any third person, both domestically and abroad.

6.      All documents and communications reflecting, referring, or relating to the Real Estate Records for the Christian Rasch Group.

7.      Any and all records pertaining to accounts established and maintained by your institution for the Christian Rasch Group, or at another institution, as reflected by your records.

8.      Any and all loan applications, financial statements or similar documents related to, or submitted by or on behalf of the Christian Rasch Group.

9.      Any and all records signed by the Christian Rasch Group.

10.     All financial, business, and property records reflecting, referring, or relating to the Christian Rasch Group.

11.     Any documents identifying any deposits to or withdrawals from the Accounts, which were transferred to or from you and/or the Christian Rasch Group, or to or from any account in which you and/or the Christian Rasch Group has had an interest, or to which you and/or the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to, the account or information pertaining to the account.

12.     Any and all letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for all transactions, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts.

13.     Any and all records pertaining to the opening or establishment of the Accounts, including but not limited to internal bank documents, applications, resolutions, signature cards, financial statements, or similar documents submitted or considered for the purposes of opening the Accounts.

14.     Any and all correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Christian Rasch Group or to the Accounts, including any documents that relate to any Account activity or any inquiry or analysis into one or more of the Accounts or their activity.

15.    Any and all documents containing information concerning access to the Accounts at any time through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

16.    Any request or communications concerning changing or termination of the Accounts.

17.    Any and all internal reports and reports to regulatory agencies, whether or not actually submitted to those agencies, regarding the Accounts.

18.    Any records related to any safety deposit box or the use thereof.

19.     Any records related to investments, instructions to invest, or any other aspect of investment of funds.