UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:20-mc-24198-JEM

---

In Re: Application of MULTIFLORA
INTERNATIONAL LTD., AGRICOLA
INDUSTRIAL ENTRE RIOS, S.A., and
AGRICOLA ESPERANZA JACOBI, S.A.,


Applicants,


Pursuant to 28 U.S.C. § 1782 for Judicial Assistance
in Obtaining Evidence for Use in Foreign
Proceedings

---

**VERIFIED SECOND AMENDED APPLICATION PURSUANT TO 28 U.S.C. § 1782
FOR ORDER TO TAKE DISCOVERY IN AID OF FOREIGN
PROCEEDINGS AND SUPPORTING MEMORANDUM OF LAW**

Pursuant 28 U.S.C. § 1782 ("Section 1782"), Applicants, Multiflora International Ltd.

("Multiflora"), Agricola Industrial Entre Rios, S.A. ("Entre Rios"), and Agricola Esperanza Jacobi,

S.A. ("Esperanza Jacobi"), apply for an order authorizing Applicants' counsel to issue the

subpoenas *duces tecum* ("Subpoenas"), attached hereto as **Composite Ex. A**, requiring (i) Jacobi

International, Inc. ("Jacobi International"); (ii) Cart Investments, Inc. ("Cart Investments"); (iii)

Bank of America N.A. ("BoA"), and (iv) Morgan Stanley Bank, N.A. ("Morgan Stanley")

(collectively, the "Subpoena Recipients"), to produce documentary and testimonial evidence for

Applicants' use in ongoing civil and criminal legal proceedings that are pending in Guatemala (the

"Guatemalan Proceedings") and in the British Virgin Islands (the "BVI Proceedings") (collectively, the "Foreign Proceedings").

The Guatemalan Proceedings relate to, *inter alia*, Christian Rasch's ("Christian") misappropriation of funds and other assets belonging to Applicants and others.  Specifically, Christian and his two brothers-Olaf and Allan Rasch-are equal shareholders of Multiflora, a company established and governed by the laws of the British Virgin Islands ("BVI").  Multiflora, in turn, is the majority owner of Esperanza Jacobi, a company established and governed by the laws of Guatemala.  Finally, Christian, Olaf, and Allan, *inter alia*, are indirect owners of Entre Rios.  Multiflora, Esperanza Jacobi, and Entre Rios form part of a Guatemalan corporate group referred to herein as the "Multiflora Companies."  In breach of his obligations, Christian, as the manager of the Multiflora Companies, has been using the Multiflora Companies' funds for personal use and expenses and selling (and/or appropriating) Applicants' assets without the authorization and knowledge of Applicants, Olaf, and Allan.

The BVI Proceedings recently were brought by Christian himself, seeking an injunction and freezing order against Multiflora, Olaf, and Allan alleging, *inter alia*, that Christian was wrongly removed as the Director of Multiflora and was cut off access to the related Morgan Stanley bank account.  Without opportunity to hear the opposition, the Court issued an *ex parte* order granting the injunction and freezing order.  Multiflora, Olaf, and Allan will file an opposition to the *ex parte* order by May 28, 2021.  The hearing is set for June 21, 2021.

The evidence sought through this Application is relevant and material to the Foreign Proceedings.  Applicants' request for discovery seeks important information held by individuals and entities in the United States over which the courts in Guatemala and the BVI do not have

jurisdiction.   Because Applicants' request for discovery satisfies all of the requirements of Section 1782, this Application should be granted.

## JURISDICTION AND VENUE

1.      This Court may properly exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Jacobi International, Cart Investments, BoA, and Morgan Stanley, are residents of, or otherwise are found in, this District and/or because a substantial part of the events giving rise to Applicants' request for discovery occurred in this District.

3.      This Court has personal jurisdiction over Jacobi International and Cart Investments, pursuant to § 48.193, Fla. Stat., because they are residents of Florida and because they committed tortious acts within Florida.  This Court also has personal jurisdiction over Jacobi International, Cart Investments, BoA, and Morgan Stanley, pursuant to § 48.193, Fla. Stat., because they conduct business in Florida.

## PARTIES

4.      Applicant, Multiflora, is a British Virgin Islands company and, as detailed below, is a plaintiff/claimant in the Guatemalan Proceedings and a respondent in the BVI Proceedings.

5.      Applicants, Entre Rios and Esperanza Jacobi, are Guatemalan companies and, as detailed below, are plaintiffs/claimants in the Guatemalan Proceedings.  Jacobi International is a Florida for-profit corporation, found in this District, with its principal address located at 3400 NW 74th Avenue, Miami, Florida, 33122.  Christian is listed as Jacobi International's Officer and he electronically executed its 2021 Florida Profit Corporation Annual Report filed with the Florida Secretary of State.  *See* **Ex. B**.

6.      Cart Investments is a Florida for-profit corporation, found in this District, with its principal address located at 3520 Saint Gaudens Ct., Miami, Florida 33133.  Christian is listed as Cart Investments' Director and he executed its 2021 Florida Profit Corporation Annual Report filed with the Florida Secretary of State.  *See* **Ex. C**.

7.      BoA is a financial institution that is found in this District.  During times material to this Application, Christian had an account at a BoA branch located in this District with an account number xxxx xxxx 6158.  Additionally, upon information and belief, Christian's BoA account located in this District was used to facilitate the misappropriation and theft of funds that are the subject of the Foreign Proceedings.

8.      Morgan Stanley is a financial institution that is found in this District.  During times material to this Application, Christian managed the Multiflora's account numbered AAA-9489 at a Morgan Stanley branch located in this District.  Additionally, upon information and belief, Christian's Morgan Stanley account located in this District was used to facilitate the misappropriation and theft of funds that are the subject of the Foreign Proceedings.

9.      The Multiflora Companies operate in the agriculture and agroindustry sectors, and focus on the production and export of agricultural products and the importation and selling of agricultural and agro-industrial machinery.

10.     For many years, Christian, as the oldest brother, managed the Multiflora Companies, having complete control over these entities' legal representatives and directors, who obeyed and sent information solely to him.

11.     Recently, however, Olaf and Allan, as holders of 66% of the shares in Multiflora and as indirect owners of certain of the other Applicants, began requesting financial information

relating to the Multiflora Companies and requesting that Christian render an accounting of his administration of these entities, to which he refused.

12.    A subsequent audit undertaken by, or on behalf of, Olaf and Allan revealed that Christian, in October 2019, caused the legal representatives of Esperanza Jacobi to sell its only asset—a valuable piece of real estate—to a company solely controlled by Christian called QB Inversiones, S.A. ("*QB*" is a reference to "*Quinta Bella*," which is the name of one of Christian's estates).  Not only was the price for the asset extremely undervalued, but QB Inversiones, S.A. never paid Esperanza Jacobi or otherwise provided it with anything of value in consideration for the transfer of this real estate parcel from Esperanza Jacobi to QB Inversiones, S.A.

13.    Additionally, in March 2020, Christian caused Entre Rios's representatives to appoint a sole administrator who, in turn, sold nine of Entre Rios's agricultural properties to a company controlled by Christian called J Dos, S.A.  As was the case with the sham transfer of Esperanza Jacobi's real estate property, the Entre Rios properties were undervalued and there is no evidence of payment to Entre Rios in consideration for the transfer of these nine properties.

14.    Approximately one month later, in April 2020, Christian entered the Rasch family office and, without authorization, misappropriated information, documents, account books, corporate books, and other data relating to the Multiflora Companies, including Applicants. There is video security footage evidencing his illegal actions.

15.    Upon discovering evidence of Christian's misconduct, Olaf and Allan caused the removal of Appellants' legal representatives and directors but the former legal representatives, administrators, and directors—who are loyal to Christian-refused to provide Applicants' new administrators, Olaf, or Allan with information regarding Christian's actions.

16.     Based on their findings, Olaf and Allan caused the Applicants to initiate the Guatemalan Proceedings as detailed below:

     a.    July 10, 2020 Private Criminal Complaint filed by Applicants Esperanza Jacobi and Multiflora against Christian, his companies QB Inversiones, S.A. and J Cinco, S.A., and former Esperanza Jacobi administrators for moral turpitude, use of falsified documents, and fraud;

     b.    July 23, 2020 Private Criminal Complaint filed by Applicants Entre Rios and Multiflora, and Sucsova Investment Corporation against Christian, his companies QB Inversiones, S.A. and J Cinco, S.A., former Entre Rios administrators for misappropriation, moral turpitude, fraud, and criminal conspiracy;

     c.    July 24, 2020 Supplemental Private Criminal Complaint filed by Applicant Multiflora against Christian, his companies QB Inversiones, S.A. and J Cinco, S.A., and former Esperanza Jacobi administrators for moral turpitude, use of falsified documents, and fraud; and

     d.    August 4, 2020 Supplemental Private Criminal Complaint filed by Applicants Multiflora and Entre Rios against Christian, his companies QB Inversiones, S.A. and J Cinco, S.A., and former Entre Rios administrators for moral turpitude, fraud, improper use of falsified documents, and criminal conspiracy.

17.     Upon information and belief, Christian has caused the illicit proceeds derived from his illegal activities to be funneled to Jacobi International, Cart Investments, and into accounts controlled by Christian and his companies, including those found at the BoA and Morgan Stanley branches located in this District.

18.     More recently, on March 17, 2021, Christian filed a Notice of Application for Injunction and Freezing Order against Multiflora, Olaf, and Allan in the Eastern Caribbean Supreme Court of the British Virgin Islands.  *See* Ex. D.

## **LEGAL ARGUMENT**

Section 1782 allows a party, or any "interested person," to a legal proceeding outside the United States to apply to a U.S. federal district court to obtain evidence for use in the

foreign proceeding. *See* 28 U.S.C. § 1782. A federal district court is authorized to grant a

Section 1782 application if the following three statutory requirements are satisfied:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance. 28 U.S.C. § 1782(a).

*See In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007). The court's "discretion in deciding

whether to grant the petition should be guided by the twin aims of the statute providing efficient

means of assistance to participants in international litigation in our federal courts and encouraging

foreign countries by example to provide similar means of assistance to our courts." *See In re

Pimenta,* 942 F. Supp. 2d 1282, 1288 (S.D. Fla. 2013), *adhered to sub nom. In re de Melo Pimenta,*

No. 12-24043-MC, 2013 WL 12157798 (S.D. Fla. Aug. 20, 2013).  In a Section 1782 proceeding,

the issue of the underlying foreign litigation does not rest before this Court.  *In re Pons* (S.D. Fla.,

Apr. 13, 2020, No. 19-23236-MC) 2020 WL 1860908, at *4, aff'd sub nom. *Pons v. AMKE

Registered Agents, LLC* (11th Cir. 2020) 835 Fed.Appx. 465 (citations omitted).

### A.    The Court Should Not Consider The Merits Of The Underlying Foreign Proceedings

Section 1782 "empowers a district court to order a person residing within its district" to

produce discovery for use in a foreign tribunal.  *In re Pons*, 2020 WL 1860908 at *4 (citing to

*Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179,

1182 (10th Cir. 2013)).  "Congress has given the district courts [ ] broad discretion in granting

judicial assistance to foreign countries," but "**[t]his review is extremely limited**…" *In re Clerici*,

481 F.3d 1324, 1331 (11th Cir. 2007) (citations omitted and emphasis added).  In a Section 1782

proceeding, "there is nothing to be done on the merits." *In re Pons*, 2020 WL 1860908 at *4.  "The only issue before the district court is discovery; the underlying litigation rests before a foreign tribunal."  *Id*.; *see also Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc*., 747 F.3d 1262, 1274 (11th Cir. 2014) ("we are in no position to assess the merits of either CONECEL's potential suit against Egas or Egas's retaliatory suit for slander"); *see also In re Furstenberg Fin. SAS*, No. 16-MC-60266, 2016 WL 10707012, at *3 (S.D. Fla. Jul. 27, 2016), *aff'd sub nom. Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031 (11th Cir. 2017) (the respondent's argument "reaches further into the underlying merits of their claims than this court is required to contemplate under Section 1782, and the merits of their claims are not to be heard and decided before this Court").  Accordingly, this Court should not consider the merits of the Foreign Proceedings as part of its Section 1782 analysis.

      **i.**    **The Discovery Sought is Relevant to Claims Pending in the Guatemalan Proceedings**

Nevertheless, the discovery sought in this Application is relevant to the underlying claims of the Foreign Proceedings.  The proposed subpoenas have been narrowly tailored in scope and time to directly relate to the allegations in the pleadings of the Foreign Proceedings as described herein.

      a.    <u>The July 10, 2020 Guatemalan Criminal Complaint</u>

On July 10, 2020, Multiflora filed a criminal complaint against Christian and Eduardo Macario Coyoy ("Macario") for moral turpitude, use of falsified documents, and fraud.[1]  *See* Ex. F, July 10, 2020 Complaint at p. 1.  By way of background, Multiflora is a stockholder of Esperanza Jacobi.  *Id*.  Christian was the Corporate Director of Esperanza Jacobi, and Macario was

---

[1] The English translations of the relevant excerpts of the Guatemalan Proceedings are forthcoming and will be provided in a supplemental filing.

the sole administrator and legal representative of the company. *Id*. at pp. 2-3. Neither Christian nor Macario had authority to sell or transfer real estate belonging to the corporation without prior authorization from the Esperanza Jacobi Board of Directors or a majority shareholders' meeting. *Id*. at p. 2. Christian and Macario nevertheless illegally transferred two real estate properties belonging to Esperanza Jacobi (and, therefore, Multiflora). *Id*. On July 4, 2017, Macario, without prior authorization from the Esperanza Jacobi Board of Directors or the Shareholders, falsified a deed[2] claiming that he had the authority to sell and transfer Esperanza Jacobi real estate properties. *Id*. As a result, on October 15, 2019, two of Esperanza Jacobi's real estate properties were transferred to QB Inversiones, S.A.—an entity in which Christian is the sole administrator and legal representative of. *Id*. at pp. 2-3. Then, on June 26, 2020, these two properties were transferred from QB Inversiones, S.A. to J Cinco, S.A.—a company solely controlled by Christian through Jacobi International. *Id*. Esperanza Jacobi's real estate properties had a total market value of **Q.22,015,481.41 ($2,856,843.35)**, but **they were sold to Christian's companies for only Q.100,000.00 ($12,957.45) and Q.25,000.00 ($3,244.13)**. *See* Ex. H, July 24, 2020 Supplemental Complaint, pp. 5, 9.

On October 8, 2020, Christian falsely declared to the Guatemalan District Metropolitan Prosecutor's Office that the sale of these two Esperanza Jacobi properties was performed as agreed upon by Christian, Olaf, and Allan. *See* Ex. I at p. 1. Christian claimed that on July 1, 2017, Multiflora sold 1999 of its shares in Esperanza Jacobi to Jacobi International. *Id*. at pp. 1-2. However, Christian falsified documents to reflect the sale of the 1999 shares from Multiflora to Jacobi International—a sale in which Olaf and Allan never agreed to. *Id*. Christian admitted that the Esperanza Jacobi properties were transferred from QB Inversiones, S.A. to J Cinco, S.A. *Id*.

---

[2] The deed described herein is the Notary Deed No.42 authorized by the Notary Public Elmer Aurence Vargas Espino. *See* Ex. F, July 10 Complaint at p. 2.

He declared that Jacobi International is the owner of J Cinco, S.A., but he falsely claimed that Olaf and Allan are the beneficiaries and owners of Jacobi International alongside Christian. *Id*. Olaf and Allan do not have any evidence supporting Christian's position that they are beneficiaries or have ownership interest in Jacobi International.

        b.     The July 23, 2020 Guatemalan Complaint

On July 23, 2020, Multiflora, Entre Rios, and Sucsova Investment Corporation (a majority shareholder of Entre Rios) filed a criminal complaint against Christian, Macario, Inocente Pernillo Fuentes ("Pernillo"), and J Dos Sociedad Anonima ("J Dos") for misappropriation, moral turpitude, fraud, and criminal conspiracy. *See* Ex. G, July 23, 2020 Complaint at pp. 4-5. The complaint alleges that on March 23, 2020, Macario was wrongfully appointed as the sole administrator and legal representative of Entre Rios. *Id*. pp. 8-9. The meeting that allegedly took place for this appointment either (i) never took place or (ii) did not have the requisite attendance of the majority of Entre Rios' shareholders. *Id*. at p. 9. As a result of this illegal appointment, on May 4, 2020, Macario authorized the sale of **_nine_** of Entre Rios's real estate properties to J Dos—a company in which Christian is the sole administrator for, the legal representative for, and has an ownership interest in. *Id*. at pp. 11-12. These properties were purchased below market value at Q.101,250.00 ($13,138.73)—a rate of only Q.11,250.00 ($1,459.86) each. *Id*. at p. 13.

        c.     The July 24, 2020 Guatemalan Complaint

On July 24, 2020, Multiflora filed a supplemental criminal complaint (relating to the prior July 10, 2020 complaint) against Christian, Macario, and Pernillo for moral turpitude, use of falsified documents, and fraud. *See* Ex. H, July 24, 2020 Complaint at pp. 1-2. The complaint

primarily makes the same allegations as the July 10, 2020 complaint.[3]  *Id*. at pp. 6-11.  However, Pernillo was added as a defendant.  *Id*. at pp. 1-2.

       d.     <u>The August 4, 2020 Guatemalan Complaint</u>

On August 4, 2020, Multiflora, Esperanza Jacobi, and Silverado Resources Corporation filed a supplemental criminal complaint (relating to the July 23, 2020 criminal complaint) against Christian, Macario, Pernillo, and J Dos for misappropriation, moral turpitude, fraud, and criminal conspiracy.  *See* Ex. J, August 24, 2020 Complaint at p. 1.  The complaint's allegations are largely similar to the July 23, 2020 criminal complaint, alleging that the defendants illegally sold nine of Entre Rios's properties to J Dos.  *Id*. at pp. 1, 4-5.

    **a.  The Discovery Sought is Relevant to Claims Pending in the BVI Proceedings**

In addition to the aforementioned Guatemalan Proceedings, the more recent BVI Proceedings—initiated by Christian himself—further demonstrate the Applicants' need for the discovery sought in this Application.  On March 17, 2021, Christian filed a Notice of Application for Injunction and Freezing Order against Multiflora, Olaf, and Allan in the Eastern Caribbean Supreme Court of the BVI (the "BVI Application").  *See* Ex. D.  In summary, the BVI Application sought to restrain Multiflora, Olaf, and Allan from moving any assets, including the proceeds of any bank accounts in the British Virgin Islands jurisdiction up to $10 million.  *Id*. at ¶1.  The application further sought to restrain Multiflora, Olaf, and Allan from dealing with the proceeds of the Allegiance of Texas, Bank of America, and Morgan Stanley bank accounts and sought to

---

[3] The complaint that on October 15, 2019, two of Esperanza's properties were illegally transferred to QB Inversiones, S.A.—and entity in which Christian is the representative of and has ownership interest in.  *See* Ex. F, July 10, 2020 Complaint at pp. 2-3.  This transfer was accomplished by falsifying a deed claiming that Macario had the authority to transfer Esperanza's real estate properties.  *Id*. at p. 2.  These properties were valued at Q.22,015,481.41 ($2,856,843.35), but they were sold for only Q.100,000.00 ($12,957.45) and Q.25,000.00 ($3,244.13). *See* Ex. H, July 24, 2020 Supplemental Complaint,  pp. 5, 9.

freeze the numerous accounts listed therein.  *Id*.   The basis of the BVI Application rests on, *inter alia*, allegations that Olaf and Allan have engaged in a campaign to cause harm to Christian by removing him as the Director of Multiflora.  *Id*. at ¶3.   Aside from Christian's many frivolous allegations, the BVI Application fails to mention Christian's numerous breaches of obligations to Multiflora and its shareholders demonstrated herein.   Nonetheless, without opportunity to hear the arguments in opposition to the BVI Application, the Court issued an *ex parte* order granting the injunction and freezing order.  *See* Ex. E.

By initiating an additional case in the BVI against Multiflora and its shareholders, Christian only has caused an increased necessity for discovery from the Application.   After Multiflora is successful in convincing the BVI court to dissolve the *ex parte* freezing order, Multiflora will assert counterclaims in that proceeding.   Those counterclaims will include, *inter alia*, claims against Christian for the misappropriation of Multiflora's funds—funds that, upon information and belief, Christian funneled to his BoA from the Morgan Stanley accounts.

### B.   Section 1782's Statutory Requirements Are Met

#### 1.   Applicants are "Interested Persons" in the Foreign Proceedings

Given that Applicants are litigants in the pending Foreign Proceedings, Applicants undoubtedly are "interested person[s]" for Section 1782 purposes. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (noting that "litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke Section 1782").[4]

---

[4] Even so, the Supreme Court held that §1782 "plainly reaches beyond the universe of persons designated 'litigant.'" *See Intel Corp*., 542 U.S at 256.

### 2.    The Requested Discovery Will Be Used in the Foreign Proceedings

Section 1782 discovery is available "for use in a proceeding in a foreign or international tribunal," a category that includes foreign civil and criminal proceedings. 28 U.S.C. § 1782(a); *see also Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1267-1270 (11th Cir. 2014) ("[Applicant] claims that it seeks the requested discovery for use in contemplated civil and criminal proceedings . . . . We agree that these contemplated proceedings satisfy section 1782").

Applicants can satisfy the "for use" requirement under Section 1782 as long as the applicants have the ability "to inject the requested information into a foreign proceeding and the requested discovery is something that will be employed with some advantage or serve some use in the proceeding." *In re Ferrer*, No. 18-20226-CIV, 2018 WL 3240010, at *5 (S.D. Fla. July 3, 2018) (internal quotation marks and citation omitted).

Applicants request the discovery at issue so they can supplement the evidentiary record underlying the claims being prosecuted in the Foreign Proceedings.  As discussed above, the evidence sought from the Subpoena Recipients is relevant and material to the claims in the Foreign Proceedings.  There is thus no doubt that the requested discovery is "for use" in foreign proceedings.  *See Weber v. Finker*, 554 F. 3d 1379 (11th Cir. 2009) (granting Section 1782 discovery request for use in pending civil action and likely future criminal action arising from commons facts).

Applicants also have satisfied the "pending proceeding" requirement under Section 1782. Applicants initiated the Guatemalan Proceedings and Multiflora is a respondent in the BVI Proceedings (where it will, at the proper procedural moment, assert its counterclaims against Christian).

### 3. *The Subpoena Recipients Reside or Are Found in This District*

The final statutory requirement is that the person or entity from whom discovery is sought must reside or be found in the Southern District of Florida. Under Section 1782, a corporation may be found, *inter alia*, in the state where it is incorporated or conducts systematic business activities. *See, e.g.*, *In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *7 (S.D. Fla. Jan. 19, 2011) (holding that a corporation may be found where it is "incorporated, headquartered, or conduct[s] systematic business activities"); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (citation and internal quotation marks omitted); *In re Wallis*, 18-mc-80147, 2018 WL 5304849, at *3 (N.D. Cal. Oct. 24, 2018) ("For the purposes of satisfying [Section 1782], a company 'may be found' in its place of incorporation . . . .").

Here, all of the Subpoena Recipients reside, or are found, in this District. First, Jacobi International and Cart Investments are incorporated in and conduct substantial business within Florida, and, as such, the companies are "found" in this District for purposes of Section 1782. *See In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 2011 WL at *7. Second, the BoA and Morgan Stanley branches located in this District, upon information and belief, were used, or are being used, to funnel funds that were misappropriated and stolen and that are the subject of the Foreign Proceedings. Put another way, the discovery being sought from BoA and Morgan Stanley relating to accounts controlled by Christian has a direct nexus to this District.

### A. A Balancing of the Section 1782 Discretionary Factors Weighs in Favor of Granting the Application

In addition to the above statutory requirements, courts have identified four discretionary factors to consider in assessing a Section 1782 application: (1) whether the person from whom

discovery is sought is a participant in the proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *In re Application of Mesa Power Grp., LLC,* 878 F. Supp. 2d 1296, 1302 (S.D. Fla. 2012) (citing *Intel*, 542 U.S. at 264-65). These discretionary factors weigh heavily in favor of granting this Application.

### 1.     *The Discovery Sought Is Not Available to Applicants in the Foreign Proceedings*

#### a.   The Subpoena Recipients Are Not Participants In The Foreign Proceedings

Generally, the need for Section 1782 aid is greater when the subject of the application is "outside the foreign tribunal's jurisdictional reach," and as such, the first discretionary factor considers whether the evidence is sought from a nonparticipant in the matter arising abroad. *Intel*, 542 U.S. at 264. This factor also requires that a district court consider whether the foreign tribunal "lacks the power to compel discovery" from a party "located outside" the foreign tribunal's jurisdiction. *In re Ferrer*, 2018 WL 3240010, at *8. The Foreign Proceedings discussed in this Application satisfy this discretionary factor.

Jacobi International,[5] Cart Investments,[6] BoA, and Morgan Stanley are located in Florida and are beyond the jurisdiction of courts in Guatemala and BVI. The Guatemalan and BVI courts thus lack the power to compel discovery from these entities. Further, these entities are

---

[5] As alleged above, Christian is listed as Jacobi International's Officer, and he executed its 2021 Florida Profit Corporation Annual Report filed with the Florida Secretary of State. *See* Ex. B.
[6] As alleged above, Christian is listed as Cart Investments' Director, and he executed its 2021 Florida Profit Corporation Annual Report filed with the Florida Secretary of State. *See* Ex. C.

nonparticipants in the Foreign Proceedings. *See In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *6 (S.D. Fla. Dec. 18, 2018) (holding that the first discretionary factor is even more apparent "when the evidence is sought from a nonparticipant in the matter rising abroad") (citation omitted); *see also Goenechea v. Davidoff,* No. CCB-15-3384, 2016 WL 560689, at *3 (D. Md. Feb. 11, 2016) (finding that the first discretionary factor weighed in favor of discovery when the subject of discovery was a non-party outside the jurisdiction of the court). As discussed by Applicants' Guatemalan law expert, Leonel Estuardo Ruiz Núñez—who also served as a Public Prosecutor in Guatemala—no such discovery mechanism exists in Guatemala and Applicants would not have the procedural means to compel production of the discovery they seek from the Subpoena Recipients. *See* Ex. K, Ruiz Decl. ¶ 16. Thus, the discovery is unobtainable in the Foreign Proceedings. Accordingly, the first *Intel* factor weighs in favor of granting this Application.

a.  Obtaining Discovery From The Subpoena Recipients Is Not
    The Same As Seeking Discovery From Christian

The Subpoena Recipients are not parties to the Foreign Proceedings. As such, Respondents cannot argue for this Court to deny the Application based on the first *Intel* discretionary factor because, "for all intents and purposes," authorizing Applicants to obtain discovery from these entities would be the same as seeking discovery from Christian himself. These arguments should be rejected because (i) courts have rejected "merging" putatively related individuals and/or entities under Section 1782, and (ii) the fact that discovery might be available through other avenues is an insufficient reason to deny a Section 1782 application.

The same analysis applies for Respondents' assertion that seeking discovery from financial institutions such as BoA or Morgan Stanley is the equivalent of seeking discovery from Christian—obtaining evidence from financial institutions for use in foreign proceedings is a

hallmark of Section 1782 applications and it would be contrary to Section 1782's objectives to allow an intervenor to simply shut down discovery by alleging that it has access to those records. *See, e.g., In re MTS Bank*, No. 17-21545-MC, 2017 WL 3155362, at *2, *11 (S.D. Fla. July 25, 2017) (allowing Section 1782 discovery seeking records from numerous bank accounts).

> i.  <u>Courts have repeatedly rejected merging distinct but related individuals and corporations under Section 1782.</u>

Numerous courts, including the Eleventh Circuit, have considered and rejected arguments regarding related but distinct entities or individuals for the purposes of Section 1782 discovery.  In *In re: Application of Bracha Found*, the applicant sought discovery from Regions Bank in order to obtain documents contemplated for use in foreign legal proceedings taking place in BVI.  *In re: Application of Bracha Found*., 663 Fed. Appx. 755, 765 (11th Cir. 2016).  Like Christian, the respondent there attempted to argue that the Section 1782 application should not be granted because the discovery in question could be obtained from a party in the foreign litigation.  *Id*. at 764.  In affirming the district court's decision to grant the 1782 application, the Eleventh Circuit emphasized that the documents sought in the subpoena were ***"broader in scope than, and not clearly [duplicative] of" documents in possession of the foreign litigant.***  *Id.* at 765 (emphasis added).  Similarly here, the documents requested are, at the very least, not clearly duplicative of the documents in possession of Christian or the other foreign litigants.

In *NanoPyxis*, the applicant sought discovery under Section 1782 from C3Nano US to obtain documents for use in civil proceedings in Korea. *In re NanoPyxis Co., Ltd*., No. 4:17-MC-80151-KAW, 2018 WL 1156838, at *3 (N.D. Cal. Mar. 5, 2018). The respondent argued that since C3Nano's chief executive officer was a participant in the Korean proceeding, the Korean courts had jurisdiction over the CEO and could effectively obtain discovery from C3Nano.  *Id*.  The trial court rejected this argument.  *Id*.  The *NanoPyxis* court found that "[e]ven if [the CEO] claimed to

17

have all of C3Nano's documents in his possession, ***personal knowledge and corporate knowledge are different***, as corporate knowledge includes the collective knowledge of all of its employees, agents, and counsel, including Morris, ***as well as information contained in its records.***" *Id*. (emphasis added).  Further, "an individual is not held to the same standard in discovery as a corporate entity." *Id*.  As a result, the trial court denied the respondent's motion to quash the subpoenas.  *Id*. at *6.  Other courts also have rejected attempts to shut down discovery based on these arguments.  *See, e.g.*, *Minis v. Thomson*, No. MISC. 14-91050-DJC, 2014 WL 1599947, at *3 (D. Mass. Apr. 18, 2014) (granting Section 1782 application because, *inter alia*, being a principal of the foreign defendant entity does not subject principal to the foreign court's jurisdiction); *In re Ex Parte Application of Pro-Sys Consultants & Neil Godfrey, Applicants*, No. CV 16-MC-91016-PBS, 2016 WL 4154306, at *2 (D. Mass. Aug. 5, 2016) (denying motion to quash subpoenas and finding that the retired chief technology officer of the foreign defendant was not a participant in the foreign proceeding).  Similarly here, Christian and the Subpoena Recipients are not the same for discovery purposes.

ii.  <u>Possible discovery through other avenues is an insufficient reason for this Court to deny the Application.</u>

Even if all of the requested evidence is in the possession and control of Christian, the Court still should grant the Application. Courts have allowed Section 1782 discovery even when some of the requested evidence *might* have been available to the foreign tribunal, but "it [was] not certain that all of [the] relevant documents would be accessible without judicial assistance..." *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1303 (S.D. Fla. 2012); *see also In re H.M.B. Ltd*., No. 17-21459-CIV, 2018 WL 4778459, at *8 (S.D. Fla. July 2, 2018), *report and recommendation adopted*, No. 17-21459-CIV, 2018 WL 4776382 (S.D. Fla. Aug. 24, 2018) (same).  First, as set forth in the Ruiz Declaration, much if not all of the evidence requested via the

Application would not be available to Applicants via the Guatemalan Proceedings. *See* Ex. K, Ruiz Decl. ¶ 16. Second, Respondents have not made a showing that Christian, alone, has access to all of the requested documents in the proposed subpoenas. And they certainly have not shown that Christian has access to all of the requested bank records.

Based on the above, Applicants have satisfied the first Intel discretionary factor.

## 2.  *The Nature and Receptivity of the Foreign Tribunals*

The second discretionary factor—the nature and receptivity of the applicable foreign tribunals—also weighs in favor of granting the requested discovery.

First, several courts have determined that Guatemalan and British Virgin Island courts would be receptive to evidence gathered via Section 1782 applications. *See Super Vitaminas, S. A*., Applicant, No. 17-mc-80125-SVK, 2017 WL 5571037, at *3 (N.D. Cal. Nov. 20, 2017) (granting Section 1782 application and finding that "[a]t the very least, there is no evidence suggesting that Guatemalan courts would be unreceptive to the discovery [applicant] seeks."); *In re Ex Parte Application of Colegio Americano de Guatemala.*, No. 16-mc-80261-HRL, 2016 WL 7325033, at *2 (N.D. Cal. Dec. 12, 2016) (granting Section 1782 application and citing to Guatemala's ascension to the Inter-American Convention on Letters Rogatory as support for its receptivity to U.S. judicial assistance in evidence gathering); *In re: Application of Bracha Found*., 663 Fed. Appx. 755, 765 (11th Cir. 2016) (affirming grant of 1782 application for discovery to be used in British Virgin Islands proceedings). Second, Applicants' Guatemalan law expert has testified that Guatemalan courts will be receptive to the discovery in this case, as it will be helpful for litigation. *See* Ex. K, Ruiz Decl. ¶¶ 14, 18. But ultimately, "a district court is not to predict the admissibility of discovered evidence in foreign tribunals." *In re Request for Assistance From Ministry of Legal Affairs of Trinidad & Tobago*, 117 F.R.D. 177, 179 (S.D. Fla. 1987).  In time, the foreign court will decide whether the evidence is admissible and will be in a position to do so

once it receives the discovery.  *In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *5 (S.D. Fla. Dec. 18, 2018) ("It is therefore the Spanish Court, rather this this Court, that should decide whether additional evidence is admissible and it will be in a better position to do so if Mr. Bernal is permitted to conduct the requested discovery first"). This second Intel factor, therefore, weighs in favor of granting the Application.

### 3.  *The Application Are Not Attempting to Circumvent Foreign Proof-Gathering Policies*

The third *Intel* factor also weighs in favor of granting this Application because Applicants do not seek to circumvent foreign proof-gathering restrictions and policies. *See Intel,* 542 U.S. at 265; *In re Chevron Corp.*, 2010 WL 4883111, at *3.  "In determining whether a petition is an effort to circumvent foreign proof-gathering restrictions, the issue is whether the discovery is being sought in bad faith."  *Id*.  Since the document requests are narrowly tailored to the issues and relevant time frame that are at issue in the Foreign Proceedings, these discovery requests are far from being sought in bad faith.  Moreover, it is well-established that "even when the requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery."  *In re: Application of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016) (citation omitted); *see also In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 (S.D. Fla. 2012) (there is no foreign discovery requirement that an applicant must meet prior to being entitled to assistance under statute providing for judicial assistance to foreign tribunals to obtain evidence for use in foreign proceedings); *Weber v. Finker*, No. 3:07-MC-27 J32MCR, 2007 WL 4285362, at *5 (M.D. Fla. Nov. 30, 2007); *In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010) (granting Section 1782 application and finding non-exhaustion of foreign options "irrelevant").  Failure to seek documents using foreign methods does not indicate an

attempt to circumvent foreign proof-gathering restrictions or other policies.  *Weber*, 2007 WL 4285362, at *5 (granting Section 1782 application even when applicants did not seek discovery in foreign tribunal).

In the instant case, Applicants' request for Section 1782 assistance is not an effort to circumvent the Guatemalan and BVI courts.  To the contrary, Applicants are attempting to collect information that will aid the Guatemalan and BVI courts in making decisions regarding the pending Foreign Proceedings.  Based on the above, the third Intel factor weighs in favor of granting the Application.

### 4.       *The Requested Discovery Is Not Intrusive or Burdensome*

As to the final discretionary factor that must be weighed by this Court, Applicants' proposed Subpoenas are not unduly intrusive or burdensome.  In determining whether a Section 1782 application is unduly intrusive or burdensome, the district court "may consider whether the application contains unduly intrusive and burdensome requests, is made in bad faith, for the purpose of harassment, or is part of a fishing expedition." *In re Ferrer*, 2018 WL 3240010, at *10 (citation and quotation marks omitted); *In re Pons*, No. 19-23236-MC, 2020 WL 364125, at *7 (S.D. Fla. Jan. 22, 2020), *aff'd*, No. 19-23236-MC, 2020 WL 1860908 (S.D. Fla. Apr. 13, 2020) (holding that the subpoena was not unduly intrusive or burdensome because it "seeks relevant evidence from a third party who is in possession of such evidence..." and the relevant period of time was specified).

Instead, the scope of the discovery arising out of this Application complies with the parameters set forth in the Federal Rules of Civil Procedure.  *See* 28 U.S.C. § 1782(a); *see also Weber v. Finker,* 554 F.3d 1379, 1385 (11th Cir. 2009) ("Once discovery is authorized under § 1782, the federal discovery rules...contain the relevant practices and procedures for the taking of testimony and the production of documents").  The protection against an unduly burdensome

subpoena is provided by the Federal Rules of Civil Procedure.  *In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, 2011 WL 181311, at fn. 5.  Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents."  *Weber*, 554 F.3d at 1385.  The "unduly burdensome" analysis is subject to Rule 45 of the Federal Rules of Civil Procedure.  *In re Pinchuk*, No. 13-CIV-22857, 2014 WL 1745047, at *2 (S.D. Fla. Apr. 30, 2014).

Pursuant to the Court's request, the Applicants have further narrowed the scope of the discovery in the Subpoenas to request only information that is directly relevant and material to the claims that will be litigated in the Foreign Proceedings. The discovery sought by Applicants is not at all burdensome, but rather seeks a discrete set of documents corresponding to a specific set of events over a defined period of time. Other courts have found that similar discovery requests for use in foreign proceedings are neither unduly intrusive nor burdensome.  *See, e.g.*, *In re Ferrer*, 2018 WL 324 0010, at *10-*11 (finding that "financial and corporate documents and related testimony" that are "relevant and go to the heart of the . . . [c]ase" meet this *Intel* prong); *In re Application of Inversiones y Gasolinera Petroleos Valenzuela*, 2011 WL 181311, at *13 (finding that there is no showing that the narrowly tailored requests are unduly intrusive or burdensome); *Goenechea*, 2016 WL 560689, at *3 (finding that a request to a third-party for documents relating to the dispute within the third-party's control was not unduly burdensome). Accordingly, the fourth *Intel* factor favors granting Applicants' discovery request. *See In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d at 1305 (finding that Section 1782 request was not burdensome because the discovery was "relevant to the foreign proceeding"); *In re*

22

*Quest Commc'ns Int'l Inc.*, No. 3:08-mc-93, 2008 WL 2741111, at *5 (W.D.N.C. July 10, 2008) (finding that Section 1782 request was not burdensome because the subpoena was "narrowly tailored to produce information relevant to the issues").

Further, courts are likely to grant Section 1782 applications when the requested documents are within the relevant time period of the claims at issue. *See In re Pons*, No. 19-23236-MC, 2020 WL 364125, at *7 (S.D. Fla. Jan. 22, 2020), *aff'd*, No. 19-23236-MC, 2020 WL 1860908 (S.D. Fla. Apr. 13, 2020), *and aff'd sub nom. Pons v. AMKE Registered Agents, LLC*, No. 20-11733, 2020 WL 6611454 (11th Cir. Nov. 12, 2020), *and aff'd sub nom. Pons v. AMKE Registered Agents, LLC*, No. 20-11733, 2020 WL 6611454 (11th Cir. Nov. 12, 2020) (holding that subpoena "is not over broad because the twenty-year time frame covers the duration of the marriage and the period during which the divorce was becoming final, and the discovery requests are tailored to obtain evidence of marital assets from specific entities and individuals."). Since the proposed subpoena requests are narrowly tailored and limited to the relevant time frame at issue in the Foreign Proceedings, this fourth and final *Intel* factor weighs in favor of granting the Application.

## CONCLUSION

For all the above reasons, Applicants request that the Court enter an order authorizing the issuance of the Subpoenas set forth in Composite Ex. A in order to obtain documentary and testimonial evidence from Jacobi International, Cart Investments, BoA, and Morgan Stanley for use in the Foreign Proceedings. A copy of the proposed order is attached for the Court's consideration.

Dated this 24th day of May 2021.

Respectfully submitted,

*/s/ Rafael R. Ribeiro*


**HOGAN LOVELLS US LLP**
Marty Steinberg
Florida Bar No. 187293
Rafael R. Ribeiro
Florida Bar No. 896241
Richard C. Lorenzo
Florida Bar No. 71412
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Tel: (305) 459-6500
Fax: (305) 459-6550
marty.steinberg@hoganlovells.com
rafael.ribeiro@hoganlovells.com
richard.lorenzo@hoganlovells.com

*Counsel for Applicants*

## **<u>VERIFICATION</u>**

The verification is forthcoming and will be provided in a supplemental filing.