**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:20-mc-24198-JEM/Becerra

In re Application of:

MULTIFLORA INTERNATIONAL LTD.,
AGRÍCOLA INDUSTRIAL ENTRE RIOS, S.A.
and AGRÍCOLA ESPERANZA JACOBI, S.A.,

     Applicants.

_____/

**ORDER[1] ON VERIFIED SECOND AMENDED**
**APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR ORDER TO**
**TAKE DISCOVERY IN AID OF FOREIGN PROCEEDINGS**

**THIS CAUSE** is before the Court on Applicants Multiflora International Ltd.

("Multiflora"), Agrícola Industrial Entre Rios, S.A. ("Entre Rios"), and Agrícola Esperanza Jacobi,

S.A.'s ("Esperanza Jacobi") (collectively "Applicants") Verified Second Amended Application

Pursuant to 28 U.S.C. § 1782 for Order to Take Discovery in Aid of Foreign Proceedings.  ECF

No. [27].[2]   Respondents Jacobi International, Inc. ("Jacobi International") and Cart Investments,

Inc. ("Cart Investments") and Intervenor Christian Rasch ("Intervenor") (collectively

"Respondents") filed their Response in Opposition to the Application (the "Opposition"), ECF No.

[34].  Thereafter, Applicants filed a Reply, ECF No. [38], and Respondents filed a Sur-Reply, ECF

No. [39].  Oral argument was presented on this matter.  ECF No. [44].  Upon due consideration of

the Application, the pertinent portions of the record, and being otherwise fully advised in the

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge.  ECF No. [10].

[2] An initial application was filed on October 13, 2020, ECF No. [1], and subsequently amended on October 21, 2020, ECF No. [3].  On April 23, 2021, the Parties appeared for a hearing on the amended application, during which the Court granted Applicants' *ore tenus* motion to file a Second Amended Application (the "Application").  ECF Nos. [24]; [26] at 50:2–6.

premises, it is hereby **ORDERED AND ADJUDGED** that the Application is **GRANTED IN PART AND DENIED IN PART**.[3]

## I.     BACKGROUND

At its core, this matter concerns a dispute among three brothers: Intervenor Christian Rasch, Non-Party Olaf Rasch, and Non-Party Allan Rasch.  ECF No. [27] at 2.  The three brothers are shareholders of Applicant Multiflora, a company established and governed by the laws of the British Virgin Islands.  *Id.*  Applicants Entre Rios and Esperanza Jacobi are Guatemalan companies.  *Id.*  Together, Applicants Multiflora, Entre Rios, and Esperanza Jacobi are part of a corporate group known as the "Multiflora Companies," which focus on the production and export of agricultural products and the importation and sale of different kinds of agricultural machinery. *Id.* at 4.  Intervenor Christian Rasch managed the Multiflora Companies for many years.  *Id.*

Non-Parties Olaf and Allan Rasch recently requested "financial information relating to the Multiflora Companies and request[ed] that [Intervenor Christian Rasch] render an accounting of his administration of these entities."  *Id.* at 4–5.  They subsequently audited the Multiflora Companies and allegedly discovered that Intervenor Christian Rasch "as the manager of the Multiflora Companies, has been using the Multiflora Companies' funds for personal use and expenses and selling (and/or appropriating) Applicants' assets without the authorization and knowledge of Applicants, Olaf, and Allan."  *Id.* at 5.  The audit apparently revealed that in October 2019, Intervenor Christian Rasch caused Applicant Esperanza Jacobi to sell its only asset, a piece of real estate, significantly below market value to QB Inversiones, S.A. ("QB Inversiones"), a

---

[3] The undersigned has the authority to grant the instant Application via order, as opposed to report and recommendation, because this Order grants the Application and only narrowly limits the scope of discovery.  *See In re Pons*, No. 19-23236-MC, 2020 WL 1860908, at *4 (S.D. Fla. Apr. 13, 2020) (noting that a ruling on a Section 1782 application is non-dispositive because it only considers discovery for use in a proceeding that is pending in a foreign tribunal).

company solely controlled by Intervenor Christian Rasch. *Id*. Applicants allege that there is no evidence of payment by QB Inversiones to Esperanza Jacobi for the October 2019 property sale. *Id.* Additionally, Applicants claim that in March 2020, Intervenor Christian Rasch caused Applicant Entre Rios to appoint a sole administrator who sold nine of Entre Rios' properties to J Dos, S.A. ("J Dos"), a company controlled by Intervenor Christian Rasch, for which no evidence of payment by J Dos exists. *Id.*

### A. The Guatemalan Proceeding

Based upon these findings, Applicants filed several private criminal complaints in Guatemala. *Id.* at 6. First, on July 10, 2020, Applicants Multiflora and Esperanza Jacobi filed a private criminal complaint against Intervenor Christian Rasch and Non-Parties QB Inversiones, J Cinco, and former Esperanza Jacobi administrators "for moral turpitude, use of falsified documents, and fraud." *Id.*; ECF No. [27-6]. Second, on July 23, 2020, Applicants Multiflora and Entre Rios, along with Non-Party Sucsova Investment Corporation, filed a private criminal complaint against Intervenor Christian Rasch and Non-Parties QB Inversiones, J Cinco, and former Entre Rios administrators "for misappropriation, moral turpitude, fraud, and criminal conspiracy." ECF Nos. [27] at 6; [27-7]. Thereafter, on July 24, 2020, Applicant Multiflora filed a supplemental private criminal complaint against Intervenor Christian Rasch and Non-Parties QB Inversiones, J Cinco, and former Esperanza Jacobi administrators for "for moral turpitude, use of falsified documents, and fraud." ECF Nos. [27] at 6; [27-8]. Finally, on August 4, 2020, Applicants Multiflora and Entre Rios filed a supplemental private criminal complaint against Intervenor Christian Rasch and Non-Parties QB Inversiones, J Cinco, and former Entre Rios administrators "for moral turpitude, fraud, improper use of falsified documents, and criminal conspiracy." ECF Nos. [27] at 6; [27-10].

For the purposes of this Application, it is now undisputed that there is an active legal proceeding in Guatemala (the "Guatemalan Proceeding").   ECF No. [45] at 28:13–19. Specifically, on July 14, 2021 and in response to one of the private criminal complaints, the Guatemalan court arraigned Intervenor Christian Rasch, placed an embargo on his accounts, and ordered that he could not leave the county because "sufficient elements exist to believe there was a commission of unlawful acts."  ECF No. [38] at 3 (emphasis omitted) (quoting ECF No. [38-5]); *see also* ECF No. [45] at 20:12–23.

### B.  The British Virgin Islands Proceeding

During the pendency of the criminal matters in Guatemala, Non-Parties Olaf and Allan Rasch purported to remove Intervenor Christian Rasch as the president of Applicant Multiflora. ECF No. [18-1] ¶¶ 14–15.  However, Intervenor Christian Rasch contests their authority to do so. *Id.* ¶ 16.  Therefore, on March 17, 2021, Intervenor Christian Rasch filed an *Ex-Parte* Notice of Application for Injunction and Freezing Order in the Eastern Caribbean Supreme Court of the British Virgin Islands (the "BVI Proceeding").  ECF Nos. [27] at 6; [27-4].

In the BVI Proceeding, Intervenor Christian Rasch sought to: (1) enjoin Applicant Multiflora and Non-Parties Olaf and Allan Rasch from "moving" any of Multiflora's assets up to $10 million; (2) enjoin Applicant Multiflora and Non-Parties Olaf and Allan Rasch from "disposing or dealing" with the proceeds of several Allegiance Bank of Texas, Bank of America, and Morgan Stanley accounts; and (3) freeze Multiflora's assets.  ECF No. [27-4] at 2–5.  The *Ex-Parte* Application was granted on March 18, 2021.  ECF No. [27-5].  On May 28, 2021, Applicant Multiflora filed a counterclaim in the BVI Proceeding seeking an order: (1) to enjoin Intervenor Christian Rasch from holding himself out as director of Multiflora; (2) requiring Intervenor Christian Rasch to disclose accounting records pertaining to Multiflora; and (3) requiring

Intervenor Christian Rasch to disclose all transactions entered into on Multiflora's behalf.  ECF No. [38-6] ¶ 3(a)–(c).  The BVI Proceeding is ongoing.  *See* ECF No. [45] at 34:1–7.

### C.  The Instant Application

Applicants seek to issue subpoenas to (1) Jacobi International, (2) Cart Investments, (3) Bank of America, N.A. ("Bank of America"), and (4) Morgan Stanley, N.A. ("Morgan Stanley"). ECF No. [27] at 1.  The subpoenas seek information regarding the unauthorized transfer of Applicants Entre Rios and Esperanza Jacobi's properties.  *Id.* at 2–3.  Applicants contend that they have satisfied the Section 1782 statutory requirements and that the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), weigh in favor of granting the Application.  *Id.* at 7–23.

First, Jacobi International is a Florida corporation located in this District.  *Id.* at 3.  The proposed subpoena requests the following documents from Jacobi International:

1.  Documents sufficient to show the corporate structure and management of Jacobi International, including but not limited to:
    (a) The identity of its officers, directors, and employees;
    (b) The identity and nature of any persons or business entities that are parents, subsidiaries, or affiliates of Jacobi International.

2.  Documents sufficient to show the extent and nature of any ownership, financial, or other interests in Jacobi International by third persons or business entities, including but not limited to:
    (a) The identity of its current and past shareholders, as well as the identity of any other person who has, or has had, a financial or any other kind of interest in Jacobi International since July 2017; and
    (b) Any transfers of ownership, control, or possession of any interest in Jacobi International by any third person or entity since July 2017.

3.  Documents sufficient to show the extent and nature of the financial or other interest that the Christian Rasch Group has, or had, in Jacobi International, including but not limited to, any of the Christian Rasch Group's share capital and stock certificates in Jacobi International, whether owned individually or jointly with any third person since October 2019.

4.      Documents sufficient to show the transfers from the Accounts to Sanacaj, S.A. since October 2019.

5.      Documents sufficient to show the domestic or foreign bank accounts of Jacobi International, including information relating to its savings accounts and checking accounts, whether owned independently or jointly with any third person since October 2019.

6.      Documents sufficient to show copies of any deeds that Jacobi International, owned either independently, or jointly with any third person, both domestically and abroad relating to the Real Estate Properties since October 2019.

7.      All documents and communications reflecting, referring, or relating to the Real Estate Properties since October 2019.

8.      Documents sufficient to show the accounts established and maintained by your institution for you and/or the Christian Rasch Group or at another institution, as reflected by your records since October 2019.

9.      Documents sufficient to show the loans and loans applications, financial statements or similar documents related to, or submitted by or on behalf of you and/or the Christian Rasch Group relating to the Real Estate Properties since October 2019.

10.     Any documents identifying any deposits to or withdrawals from the Accounts, which were transferred to or from you and/or the Christian Rasch Group or to or from any account in which you and/or the Christian Rasch Group has had an interest, or to which you and/or the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to, the account or information pertaining to the account relating to the Real Estate Properties since October 2019.

11.     Documents sufficient to show the letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for the transactions relating to the Real Estate Properties, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts relating to the Real Estate Properties since October 2019.

12.    Documents sufficient to show the individuals or entities with access to the Accounts since October 2019 through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

13.    Documents sufficient to show the records related to investments, instructions to invest, or any other aspect of investment of funds relating to the Real Estate Properties since October 2019.

ECF No. [27-1] at 72–74.

Second, Cart Investments is a Florida corporation located in this District.  ECF No. [27] at

4.  The proposed subpoena requests the following documents from Cart Investments:

1.    Documents sufficient to show the corporate structure and management of Cart Investments, including but not limited to:
(a)The identity of its officers, directors, and employees;
(b)The identity and nature of any persons or business entities that are parents, subsidiaries, or affiliates of Cart Investments.

2.    Documents sufficient to show the extent and nature of any ownership, financial, or other interests in Cart Investments by third persons or business entities, including but not limited to:
(a) The identity of its current and past shareholders, as well as the identity of any other person who has, or has had, a financial or any other kind of interest in Cart Investments since October 2019; and
(b)Any transfers of ownership, control, or possession of any interest in Cart Investments by any third person or entity since October 2019.

3.    Documents sufficient to show the extent and nature of the financial or other interest that the Christian Rasch Group has, or had, in Cart Investments relating to Real Estate Properties, including but not limited to, any of the Christian Rasch Group's share capital and stock certificates in Cart Investments, whether owned individually or jointly with any third person since October 2019.

4.    Documents sufficient to show the transfers from the Accounts to Sanacaj, S.A. since October 2019.

5.    Documents sufficient to show the domestic or foreign bank accounts of Cart Investments, including information relating to its savings accounts and checking accounts, whether owned independently or jointly with any third person since October 2019.

6. Documents sufficient to show copies of any deeds that Cart Investments, owned either independently, or jointly with any third person, both domestically and abroad relating to the Real Estate Properties since October 2019.

7. All documents and communications reflecting, referring, or relating to the Real Estate Properties since October 2019.

8. Documents sufficient to show the accounts established and maintained by your institution for you and/or the Christian Rasch Group or at another institution, as reflected by your records since October 2019.

9. Documents sufficient to show the loans and loans applications, financial statements or similar documents related to, or submitted by or on behalf of you and/or the Christian Rasch Group relating to the Real Estate Properties since October 2019.

10. Any documents identifying any deposits to or withdrawals from the Accounts, which were transferred to or from you and/or the Christian Rasch Group or to or from any account in which you and/or the Christian Rasch Group has had an interest, or to which you and/or the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to, the account or information pertaining to the account relating to the Real Estate Properties since October 2019.

11. Documents sufficient to show the letters, memoranda, communications, emails, texts, notes, correspondence, contracts, agreements, records of signature cards, bank statements, checks, cancelled checks, deposits slips, transfers, withdrawals, wire transfers, account statements, including generated records, financial records, reports, and handwritten notes and transactions including, without limitation, any and all resolutions relating to the Accounts for the transactions relating to the Real Estate Properties, as well as the identities of any and all persons who were authorized to, or who did, communicate regarding the Accounts, or similar documents relating to the Accounts relating to the Real Estate Properties since October 2019.

12. Documents sufficient to show the individuals or entities with access to the Accounts since October 2019 through any electronic means, including any and all information identifying the person or entity accessing the Accounts.

13. Documents sufficient to show the records related to investments, instructions to invest, or any other aspect of investment of funds relating to the Real Estate Properties since October 2019.

ECF No. [27-1] at 59–61.

Third, the Application states that Intervenor Christian Rasch has a personal Bank of America account at a branch located in this District.  ECF No. [27] at 4; *see also* ECF No. [13-1]

¶ 21(d).  The proposed Bank of America subpoena requests the following documents:

1. Documents sufficient to identify the accounts at any financial institution, brokerage or any other entity which maintains funds or investments for any accounts for the Christian Rasch Group or to which the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to ("The Accounts") since October 2019.

2. Documents sufficient to show deposits or transfers, disposition or withdrawals to and from the Accounts related to the Real Estate Properties since October 2019.

3. Documents sufficient to show transfers of the Real Estate Properties from J Dos, S.A., J Cinco S.A., or QB Inversiones, S.A. to Cart Investments or Jacobi International.

4. Documents sufficient to show consideration for the Real Estate Properties from J Dos, S.A., J Cinco S.A., or QB Inversiones, S.A. to Cart Investments or Jacobi International.

5. All documents and communications reflecting, referring, or relating to the Real Estate Properties for the Christian Rasch Group since October 2019.

6. Documents sufficient to show any loan applications, financial statements or similar documents related to, or submitted by or on behalf of the Christian Rasch Group relating to the Real Estate Properties since October 2019.

7. Documents sufficient to show correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Real Estate Properties since October 2019.

8.  Documents sufficient to show access to the Accounts through any electronic means, including documents sufficient to identify the person or entity accessing the Accounts since October 2019.

ECF No. [27-1] at 11–12.

Finally, the Application states that Multiflora has an account with Morgan Stanley at a branch located in this District.  ECF No. [27] at 4.  The proposed Morgan Stanley subpoena submitted along with the Application requests the following documents:

1.  Documents sufficient to identify the accounts at any financial institution, brokerage or any other entity which maintains funds or investments for any accounts for the Christian Rasch Group or to which the Christian Rasch Group has been a signatory or otherwise at any time have had control of, or access to ("The Accounts") since October 2019.

2.  Documents sufficient to show deposits or transfers, disposition or withdrawals to and from the Accounts related to the Real Estate Properties since October 2019.

3.  All documents and communications relating to the transfers of the Real Estate Properties from J Dos, S.A., J Cinco S.A., or QB Inversiones, S.A. to Cart Investments or Jacobi International.

4.  Documents sufficient to show consideration for the Real Estate Properties from J Dos, S.A., J Cinco S.A., or QB Inversiones, S.A. to Cart Investments or Jacobi International.

5.  All documents and communications reflecting, referring, or relating to the Real Estate Properties since October 2019.

6.  Documents sufficient to show any loan applications, financial statements or similar documents related to, or submitted by or on behalf of the Christian Rasch Group relating to the Real Estate Properties since October 2019.

7.  Documents sufficient to show correspondence, emails, or other communications, including but not limited to your internal correspondence, emails, or other communications relating to the Real Estate Properties since October 2019.

8.  Documents sufficient to show access to the Accounts through any electronic means, including documents sufficient to identify the person or entity accessing the Accounts since October 2019.

ECF No. [27-1] at 35–36.

Applicants submitted the Declaration of Mr. Omar Sherydan Xicará Ajanel in support of the Application.  *See* ECF Nos. [17-1]; [38-1].[4]  Mr. Xicará attests that he has been the legal representative of Applicants Entre Rios and Esperanza Jacobi since the Application was filed on October 21, 2020.  ECF No. [17-1] ¶¶ 3, 8.  Specifically, he notes that the documents issued by Guatemala's Mercantile Registry reflect that he was nominated as Applicant Entre Rios' legal representative on October 9, 2020 and as Applicant Esperanza Jacobi's legal representative on September 7, 2020.  *Id.*  ¶¶ 6–7.

Additionally, Applicants submitted the Declaration of Leonel Estuardo Ruiz Nuñez, an attorney authorized to practice law in Guatemala.  *See* ECF Nos. [17-2]; [38-2].[5]  First, Mr. Nuñez notes that based on his review of the dockets and case files related to the Guatemalan Proceeding, that Proceeding is still pending.  ECF No. [17-2] ¶ 8.  Specifically, he notes that the criminal complaints "are in the investigative phase, and the relevant Public Prosecutors are taking and accepting evidence from the parties, as well as conducting their own investigation."  *Id.* ¶ 9.  Mr. Nuñez states that in Guatemala, discovery obtained from foreign countries is admissible and "cannot be rejected by the Public Prosecutor's Office" so long as it meets certain statutory requirements, including that the evidence was obtained lawfully and that the evidence is authenticated by a Guatemalan diplomat or consular official in the place where the evidence was obtained.  *Id.* ¶ 14.  Moreover, Mr. Nuñez attests that there is no discovery mechanism in Guatemala whereby a prosecutor could obtain discovery from foreign parties.  *Id.* ¶ 16.  Finally, Mr. Nuñez states that, in his opinion, Applicants are not attempting to circumvent the Guatemalan

---

[4] ECF Nos. [17-1] and [38-1] are identical filings.
[5] ECF Nos. [17-2] and [38-2] are identical filings.

foreign proof gathering policies because Guatemala permits this method of obtaining evidence so long as the evidence is collected in conformity with the aforementioned statutory requirements. *Id.* ¶¶ 17–18.

Applicants also submitted the Supplemental Declaration of Mr. Nuñez. ECF No. [38-7]. In his Supplemental Declaration, Mr. Nuñez describes Guatemala's criminal justice system with greater specificity. *Id.* ¶ 5. He explains that proceedings in Guatemala occur in two main stages – one solely before the prosecutor and one before the criminal court. *Id.* ¶ 8. In the stage before the prosecutor, an investigation is conducted by taking evidence from all parties and conducting any additional investigations that may be necessary. *Id.* ¶ 8(a). Thereafter, the case moves to the second stage, wherein the prosecutor requests judicial control of the case by presenting it to the criminal court. *Id.* ¶ 8(b). While in the criminal court, the case goes through three phases. *Id.* First, the prosecutor conducts a final investigation; at this juncture, the defendant has been formally charged and the investigation can last between three and six months depending on the defendant's detention. *Id.* ¶ 8(b)(i). At the second phase, the prosecutor presents the evidence gathered and requests a trial date from the criminal court. *Id.* ¶ 8(b)(ii). In the final phase, the trial occurs, and the defendant is adjudicated. *Id.* ¶ 8(b)(iii). Mr. Nuñez notes that the criminal complaints are all in the initial stage solely before the prosecutor as none of them have been presented to the court. *Id.* ¶ 9. As such, the prosecutor "is receptive to receiving foreign-obtained evidence regarding the proceedings . . . ." *Id.*

Finally, Applicants submitted the Declaration of Grant Carroll (the "Carroll Declaration"), the attorney of record for Applicant Multiflora in the BVI Proceeding. ECF No. [38-6] ¶ 1. Mr. Carroll attests that on May 28, 2021, Applicant Multiflora filed a counterclaim in the BVI Proceeding, seeking an injunction that prevents Intervenor Christian Rasch from holding himself out as director of Multiflora and an order that requires Intervenor Christian Rasch to disclose all

accounting records and transactions relating to Multiflora.  *Id.* ¶ 3(a)–(c).  He notes that the BVI court is receptive to foreign discovery and that there are no procedures that would allow the court to obtain discovery from non-party, foreign entities without the assistance of a foreign tribunal. *Id.* ¶¶ 4–5.

### D.  The Opposition To The Application

Respondents filed an Opposition to the Application, arguing that it should be denied in its entirety on a variety of grounds.  ECF No. [34].  First, Respondents argue that Applicants Entre Rios and Esperanza Jacobi do not have standing to bring this Section 1782 Application because the Application was brought under the purported authority of Mr. Xicará, who they claim was not the entities' authorized representative at the time the Application was filed.  *Id.* at 9.  Instead, Respondents argue that the authorized representative of Applicants Entre Rios and Esperanza Jacobi is Eduardo Macario, who has since filed his own private criminal complaint in Guatemala alleging that he was unlawfully removed as the representative of Applicant Entre Rios and Esperanza Jacobi in May 2020.  *Id.* at 9–10.  Although Respondents "emphasize that they do not request or expect that this Court will make determinations as to who is properly authorized to act on behalf of Applicants, the mere pendency of this important threshold issue should factor heavily into the Court's exercise of its discretion in this case . . . ."  *Id.* at 11.  At the hearing, counsel for Respondents clarified that proceedings were not initiated against Mr. Xicará, but instead were filed against Mr. Xicará's predecessor.  ECF No. [45] at 9:7–11:22.  As such, there is no action currently pending against Mr. Xicará regarding his appointment as the representative of Applicants Entre Rios and Esperanza Jacobi.  *Id.*  Nonetheless, Respondents insist that Mr. Xicará is implicated in the proceedings because his predecessor's appointment is challenged, and Mr. Xicará was subsequently appointed in the same manner.  *Id.* at 9:13–19.

Second, although Respondents concede that the statutory requirements for relief under Section 1782 are satisfied as to the Guatemalan Proceeding, they argue that the factors are not satisfied as to the BVI Proceeding. ECF No. [34] at 11–12. Specifically, Respondents argue that the Application does not sufficiently establish that the discovery sought is for use in the BVI Proceeding. *Id.* Respondents note that the Application merely states that the discovery is necessary because once the freeze is lifted in the BVI Proceeding, Applicant Multiflora intends to assert counterclaims for misappropriation of funds, which Intervenor Christian Rasch allegedly funneled to the Bank of America and Morgan Stanley accounts. *Id.* at 13. Respondents submit that "Applicants offer no explanation for how any of those documents [requested] could possibly be used to support the nebulous counterclaims Applicants are supposedly contemplating." *Id.*

Third, Respondents argue that the first *Intel* factor, whether the entity from which discovery is sought is a participant in the foreign proceeding, weighs against granting the Application. *Id.* at 13–14. Specifically, Respondents argue that "all or a vast majority of the discovery sought is within [Intervenor Christian Rasch]'s possession or control . . . ." *Id.* at 14. They argue that because Intervenor Christian Rasch is an officer of two subpoena recipients, Jacobi International and Cart Investments, Intervenor is in possession of all the requested documents. *Id.* In their view, a subpoena on Jacobi International and Cart Investments is a subpoena on Intervenor Christian Rasch, who is a participant in the foreign proceedings and is subject to the jurisdiction of the courts in those forums. *Id.* Moreover, as to Bank of America and Morgan Stanley, Respondents note that although Intervenor Christian Rasch does not have control over these entities, he has access and control over the accounts at issue because he established them and has made personal use over them. *Id.* at 15. In sum, Respondents argue that the documents requested from the discovery targets are all within Intervenor Christian Rasch's possession, custody, and control, and if discovery is ordered, Intervenor Christian Rasch would be the one personally compiling the

responsive documents. *Id.* at 16. As such, because Intervenor Christian Rasch and the discovery targets are one in the same, Intervenor Christian Rasch can be compelled to produce the requested documents in the foreign proceedings to which he is a party. *Id.* at 16–17.

Fourth, Respondents argue that the second *Intel* factor, whether the foreign tribunals are willing to consider the information sought, also weighs against the Application because it remains unclear if the Guatemalan prosecutor would accept the discovery sought. *Id.* at 17–18. Specifically, evidence in Guatemala is typically obtained and processed by the prosecutor's office pursuant to the Guatemalan code of criminal procedure such that evidence collected directly by the parties may be considered unreliable. *Id.* at 17.

Fifth, Respondents contend that the third *Intel* factor, whether the discovery sought is an attempt to circumvent foreign proof-gathering limits, also weighs against granting the Application. *Id.* at 18. Respondents maintain that because the requested discovery is within Intervenor Christian Rasch's possession, custody, and control and Applicants have not indicated that Intervenor Christian Rasch would not comply with discovery obligations that arise in the foreign proceedings, Applicants are sidestepping foreign discovery rules. *Id.* at 19. Respondents also emphasize that Applicants are "jumping the gun" because the prosecutor in Guatemala has yet to determine whether any of the criminal complaints can proceed on the merits and has not delineated the scope of the criminal proceedings such that this discovery request is premature. *Id.*

Sixth, Respondents argue that the fourth *Intel* factor, whether the discovery sought would be unduly burdensome, also weighs against the Application because the discovery is equally available from Intervenor Christian Rasch in Guatemala, thereby rendering this proceeding unduly burdensome by definition. *Id.* at 20.

Finally, Respondents argue that many of the requests are overbroad to the extent they seek information about all transfers to Intervenor Christian Rasch's wife's company, Sanacaj, S.A.,

without specifically narrowing the request to the property transfers at issue.  *Id.* at 21.  Respondents also argue that the subpoenas are overbroad to the extent they seek duplicative information; for example, Respondents point to the Cart Investments subpoena, which seeks bank account information in three separate requests.  *Id.* at 21–22.  As such, Respondents request that the discovery sought be "tailored to the issues in dispute."  *Id.* at 22.

In support of the Opposition, Intervenor Christian Rasch submitted a Declaration, ECF No. [13-1], a Supplemental Declaration, ECF No. [18-1], and a Second Supplemental Declaration, ECF No. [34-4].  Intervenor Christian Rasch attests that the instant Application was brought by his younger brothers Non-Parties Allan and Olaf Rasch in an attempt to "conceal their own wrongdoing, intimidate and harass [him] and [his] family, and create leverage for negotiations in a dispute over [the] family business."  ECF No. [13-1] ¶ 3.  Specifically, Intervenor Christian Rasch notes that in March 2020, he discovered that Non-Parties Olaf and Allan Rasch had been stealing from the family companies by transferring money to offshore and private accounts.  *Id.* ¶¶ 15–16.  Intervenor Christian Rasch states that when he confronted his brothers to resolve the dispute, all attempts were rejected, and the brothers initiated a scheme to exclude Intervenor Christian Rasch from the family companies, take over his accounts, and liquidate his assets.  *Id.* ¶¶ 17–19.  As a result, Intervenor Christian Rasch filed private criminal complaints against his brothers in Guatemala for money laundering and intellectual property theft.  *Id.* ¶ 20.

As to the instant proceeding, Intervenor Christian Rasch explains that Applicant Multiflora is a holding company for shares that he and his siblings possess in other entities.  *Id.* ¶ 4(a). Intervenor Christian Rasch states that the transactions alleged in the Application were legitimate because the properties were transferred to "non-operating companies as a lawful asset protection mechanism."  *Id.* ¶ 9.  Moreover, he explains that he did not misappropriate any funds, but instead that he and his brothers each maintain separate Multiflora bank accounts to deposit earnings and

handle personal expenses.  *Id.* ¶ 10.  Intervenor Christian Rasch notes that two private criminal complaints filed in Guatemala by his brothers have been dismissed by the prosecutors, who determined that the allegations were without merit.  *Id.* ¶ 13.  Intervenor Christian Rasch claims that the dismissals support his argument that Eduardo Macario is the representative of Applicants Esperanza Jacobi and Entre Rios, and not Mr. Xicará, as Applicants posit.  *Id.* ¶ 14.

In his Supplemental Declaration, Intervenor Christian Rasch emphasizes that he would comply with all Guatemalan discovery orders to produce documents in his possession.  ECF No. [18-1] at 13.  He notes that for all intents and purposes, Applicants are seeking discovery from him because neither Jacobi International nor Cart Investments have any employees, and if discovery is ordered, he would be the one responsible for producing the documents; as such, he submits that there is no distinction between corporate and personal knowledge in this case.  *Id.* ¶ 20.  In addition, Intervenor Christian Rasch states that Mr. Xicará had no authority to authorize the filing of the instant Application because he was not the legal representative of Applicants Entre Rios or Esperanza Jacobi.  *Id.*  He emphasizes that control over the Multiflora Companies is the core of the legal proceedings in Guatemala and the British Virgin Islands and that his brothers are not authorized to act on behalf of Applicant Multiflora.  *Id.* at 14.

Finally, in his Second Supplemental Declaration, Intervenor Christian Rasch again maintains that Mr. Xicará is not the legal representative of Applicants.  ECF No. [34-4] ¶ 5.  To that extent, Intervenor Christian Rasch notes that Mr. Macario filed a private criminal complaint in Guatemala contesting the appointment of Mr. Xicará as Applicant Entre Rios' legal representative.  *Id.* ¶ 5.  He states that the Guatemalan prosecutor has requested judicial control to further investigate the use of false documents in connection with the appointment of Cesar Humberto Gustavo Lopez Velazquez, Mr. Xicará's predecessor.  *Id.* ¶¶ 6–8.  These falsified documents were subsequently used to support the appointment of Mr. Xicará.  *Id.* ¶ 9.  In

Intervenor Christian Rasch's view, it follows that the legitimacy of Mr. Xicará's appointment is also in question.  *Id.* ¶¶ 7–9.  In addition, Intervenor Christian Rasch notes that the High Court of the British Virgin Islands has issued an order enjoining his brothers from "moving, dealing, or disposing of" certain bank accounts.  *Id.* ¶ 10.

Respondents also submitted the Declaration of Fernando Linares-Beltranena, ECF No. [13-2], and the Supplemental Declaration of Mr. Linares-Beltranena, ECF No. [18-1].   In his Declaration, Mr. Linares-Beltranena states that the July 23, 2020 and the August 4, 2020 private criminal complaints have been dismissed by the prosecutor in Guatemala.  ECF No. [13-2] ¶ 5.  Mr. Linares-Beltranena explains that a private criminal complaint is a "private matter, which serves to protect the reputation of the accused."  *Id.* ¶ 7.  Upon receiving a private criminal complaint, the prosecutor investigates the allegations and if the prosecutor determines that the allegations are meritorious, the case is taken to court, thereby making it public.  *Id.* ¶¶ 7–8.  Mr. Beltranena further notes that the Guatemalan prosecutor may seek discovery directly from this Court for use in a foreign criminal proceeding; however, if the discovery is sought directly by a party and submitted to the prosecutor, the Guatemalan court "may find the evidence is tainted or prejudiced because it was compiled and presented by interested parties."  *Id.* ¶ 17.   In his Supplemental Declaration, Mr. Linares-Beltranena clarifies that the July 20, 2020 private criminal complaint remains pending, and that the July 23, 2020 private criminal complaint appears to have been re-instated in violation of Guatemalan law, and that in his view, a second dismissal of this complaint is imminent.  *Id.* ¶¶ 5–7.  He further notes that there are discovery mechanisms in Guatemala that a prosecutor and a Guatemalan court could employ to obtain discovery from Intervenor Christian Rasch directly.  *Id.* ¶ 8.

**E. The Reply In Support Of The Application**

Applicants filed a Reply in support of their Application.  ECF No. [38].  As an initial matter, Applicants note that Mr. Xicará is the current authorized representative of Applicants Entre Rios and Esperanza Jacobi and that this Court is not tasked with determining issues of foreign corporate governance.  *Id.* at 2–3.  Next, Applicants argue that they have met Section 1782's statutory requirements with respect to the BVI Proceeding because the discovery sought is for use in that proceeding.  *Id.* at 4.  Specifically, on May 28, 2021, Applicant Multiflora asserted a counterclaim in the BVI Proceeding and it "will need to show evidence of [Intervenor Christian Rasch]'s numerous fraudulent acts.  Documents related to the fraudulent transfer of Esperanza Jacobi's properties and the fraudulent transfer of the nine properties owned by Entre Rios . . . will be critical to supporting [those] arguments."  *Id.*

Moreover, Applicants contend that a balancing of the *Intel* factors weighs in favor of the Application.  *Id.*  First, Applicants state that none of the subpoena recipients are participants in the foreign proceedings.  *Id.*  As to Jacobi International and Cart Investments, Applicants argue that these are entities with their own corporate existence and Applicants should not have to rely on Intervenor Christian Rasch's assurances that seeking discovery from these entities is the same as seeking discovery from him personally.  *Id.* at 5.  Applicants state that there is no legal support for the assertion that Intervenor Christian Rasch and the subpoena recipients are the same for discovery purposes.  *Id.* at 6–7.  As to Bank of America and Morgan Stanley, Applicants argue that obtaining discovery from a financial institution is not the same as obtaining discovery from Intervenor Christian Rasch because it ensures that all records in existence are actually produced. *Id.* at 5–6.  In addition, Applicants emphasize that there is no discovery mechanism in Guatemala or the British Virgin Islands that would allow those courts to compel discovery from non-party, foreign entities.  *Id.* at 6.  Applicants note that there is no evidence on the record to suggest that

Intervenor Christian Rasch has access to all the requested documents and bank records, and as such, "the fact that Applicants may eventually obtain the documents in the foreign proceedings does not mean they are precluded from obtaining them in this Court." *Id.* at 8.

Second, Applicants argue that courts have routinely found that Guatemalan and British Virgin Islands courts are receptive to foreign discovery, which is supported by the affidavits of the Guatemalan and BVI attorneys that were submitted in support of the Application. *Id.* at 8–9; *see also* ECF Nos. [17-2], [38-2], [38-6], [38-7]. Specifically, Applicants note that their "Guatemalan law expert testified that Guatemalan courts likely will be receptive to the discovery in this case as it will be helpful in the litigation" and their "BVI counsel testified that the BVI High Court will be receptive to receiving relevant foreign discovery." ECF No. [38] at 8. In addition, Applicants state that this Court need not predict whether the discovery will be admissible in the foreign tribunals, only whether those courts would be receptive to the documents requested. *Id.* at 9.

Third, Applicants respond that the argument that the discovery sought is in Intervenor Christian Rasch's custody and control is not dispositive of their request. *Id.* at 9. Applicants state that this argument fails because it "(i) is not factually supportable, (ii) is inconsistent with the purposes of Section 1782, and (iii) Respondents [and Intervenor Christian Rasch] have failed to show that [Intervenor Christian Rasch] even has access to all of the documents requested in the Foreign Proceedings." *Id.* Moreover, Applicants argue that they are not "jumping the gun" because the Guatemalan court has now ordered the arraignment and embargo of Intervenor Christian Rasch's accounts, which, in Applicants' view, is a clear indication that the Guatemalan Proceeding is moving forward. *Id.* at 10.

Finally, Applicants argue that the proposed subpoenas are not unduly burdensome because the subpoenas have been substantially narrowed and only seek documents directly related to the claims asserted in the Foreign Proceedings. *Id.* Applicants maintain that the subpoenas are not

20

unduly burdensome because they seek information equally available from Intervenor Christian Rasch since Intervenor Christian Rasch and the subpoena recipients are not the same.  *Id.* Additionally, the subpoena's request for information relating to Intervenor Christian Rasch's wife's company, Sanacaj, S.A., is not overly broad because in an analogous 1782 proceeding in California, Applicants discovered that Intervenor Christian Rasch had been funneling money and assets through a company owned by his daughters.  *Id.* at 10–11.  Therefore, information regarding his wife's company may further indicate whether he misappropriated Applicant Multiflora's assets through his family's companies.  *Id.* at 11.

### F.  The Sur-Reply

Respondents filed a Sur-reply in opposition to the Application.   ECF No. [39]. Respondents note that in July 2021, a Guatemalan court entered an injunction freezing certain accounts belonging to Intervenor Christian Rasch and Eduardo Macario and prohibiting them from leaving Guatemala.  *Id.* at 2–3.  This injunction was entered in response to the July 23, 2020 private criminal complaint filed by Applicant Entre Rios.  *Id.* at 3.  Respondents claim that it is relevant that the injunction was entered in the Entre Rios case because a Guatemalan prosecutor recently requested judicial control of an unrelated matter regarding the possible commission of crime in the appointment of Entre Rios' legal representative.  *Id.*  As such, Respondents submit that the Court should refrain from exercising its discretion here considering the continued uncertainty of the foreign proceedings.  *Id.* at 4.

In addition, Respondents again argue that (1) Applicants have not satisfied the Section 1782 statutory requirements as to the BVI Proceeding because they have failed to demonstrate the purpose of the requested discovery, *id.* at 4–5; (2) the discovery sought here is within the reach of the foreign tribunals through Intervenor Christian Rasch, *id.* at 5–7; and (3) the subpoenas are

overly broad to the extent they request information regarding Intervenor Christian Rasch's wife's

company, *id.* at 9.

## II.       ANALYSIS

Section 1782 seeks "to provide federal-court assistance in gathering evidence [and other

tangible evidence] for use in foreign tribunals."  *Intel Corp.*, 542 U.S. 241 at 247.  District courts

have the authority to grant an application for judicial assistance in foreign proceedings when the

statutory requirements of Section 1782(a) are satisfied.  The Eleventh Circuit has enumerated the

statutory requirements as follows:

> (1) the request must be made 'by a foreign or international tribunal,'
> or by 'any interested person'; (2) the request must seek evidence,
> whether it be the 'testimony or statement' of a person or the
> production of a 'document or other thing'; (3) the evidence must be
> 'for use in a proceeding in a foreign or international tribunal'; and
> (4) the person from whom discovery is sought must reside or be
> found in the district of the district court ruling on the application for
> assistance.

*Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1198–99 (11th Cir. 2016) (quoting *Consorcio*

*Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269

(11th Cir. 2014)).  Courts should also consider whether the application is "made in bad faith, as a

fishing expedition, or as a means to harass."  *In re Kivisto*, 521 F. App'x 886, 888 (11th Cir. 2013).

District courts should deny Section 1782 applications when it is apparent that the request is a

fishing expedition or a means of harassment.  *Id.* at 889.

Once the Section 1782 statutory factors are met, a district court must evaluate four

discretionary factors established by the Supreme Court in *Intel*.  The Eleventh Circuit outlined the

*Intel* factors, as follows:

> (1) whether 'the person from whom discovery is sought is a
> participant in the foreign proceeding,' because 'the need for §
> 1782(a) aid generally is not as apparent as it ordinarily is when
> evidence is sought from a nonparticipant'; (2) 'the nature of the

> foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'

*In re Clerici*, 481 F.3d 1324, 1334 (11th Cir. 2007) (quoting *Intel*, 542 U.S. at 264–65). While the factors are routinely discussed individually, they should not be considered independent of each other; rather, they should be considered collectively by a court when deciding whether to excise its discretion in granting a Section 1782 application. *In re Application of Action & Proc. Found. Daniel Bodnar*, No. C-14-80076-MISC-EMC-LB, 2014 WL 2795832, at *5 (N.D. Cal. June 19, 2014).

**A.  Applicants Have Standing To Bring This Section 1782 Application.[6]**

Applicants Entre Rios and Esperanza Jacobi assert that the filing of the Application was authorized by the legal representative of the entities, Mr. Xicará. *See* ECF Nos. [38-1], [38-4]. In his Declaration, Mr. Xicará attests that he was appointed as the representative of Entre Rios on October 9, 2020 and as the representative of Esperanza Jacobi on September 7, 2020. ECF No. [38-1] ¶¶ 6–7. Therefore, because the Application was submitted on October 21, 2020, it was filed pursuant to his authority as the legal representative of both entities. *Id.* ¶ 8.

Respondents contend that Applicants do not have standing because Mr. Xicará is not the legal representative of Applicants Entre Rios or Esperanza Jacobi and therefore could not have authorized the filing of this Application. ECF No. [34] at 9. Instead, Respondents claim that this "position belongs to the entities' long-time representative and administrator, Eduardo Macario." *Id*. Specifically, Respondents state that Mr. Xicará was nominated as representative the day before

---

[6] Applicant Multiflora's standing was not challenged. *See* ECF No. [34] at 9.

this Section 1782 proceeding was filed, which in their view, is indicative of the "ping-pong match of designating the entities' representatives." *Id.* at 10.  At the hearing, Respondents conceded that although the ongoing proceeding as to Mr. Velazquez *may* lead the prosecutor to investigate Mr. Xicará's appointment, that is not currently the case; as such, Mr. Xicará's appointment is not the subject of any ongoing proceedings in Guatemala.  ECF No. [45] at 11:12–22.

The Court declines to issue any opinion as to the corporate governance of Applicants Entre Rios and Esperanza Jacobi.  As the Parties unanimously concede, the Court has no authority to determine whether Mr. Xicará was properly appointed as the representative of Applicants Entre Rios and Esperanza Jacobi in Guatemala.  *See* ECF Nos. [34] at 11; [38] at 2–3.  Instead, the Court only considers whether the instant Application was properly filed.  This is a limited inquiry, guided solely by the instant Application, the declarations submitted by the Parties, and the representations of counsel on the record.

The Court notes that Mr. Xicará, as the "legal representative" of Applicants Entre Rios and Esperanza Jacobi, submitted a verification, declaring that the facts set forth in the Application are true and correct.  ECF No. [38-4] at 2.  In addition, Mr. Xicará submitted a declaration, attesting that he is currently the legal representative of Applicants Entre Rios and Esperanza Jacobi and that he was the representative at the time the Application was filed.  ECF No. [38-1] ¶¶ 1, 5–8.  In support of this contention, Mr. Xicará submitted two documents issued by Guatemala's Mercantile Registry, which substantiate that Mr. Xicará was the representative of Applicants Entre Rios and Esperanza Jacobi at the time this Application was filed.  ECF No. [38-1] at 4–11.  Respondents have not rebutted Mr. Xicará's assertion.  Moreover, at the hearing on this matter, counsel for Applicants Entre Rios and Esperanza Jacobi affirmed that Mr.  Xicará is the person who gives counsel direction with respect to the instant litigation and on Entre Rios and Esperanza Jacobi's behalf.  ECF No. [45] at 5:2–6:10.  Although the legal representation of Applicants Entre Rios and

Esperanza Jacobi may be the subject of ongoing proceedings in Guatemala, Mr. Xicará is not a party to those proceedings.  ECF Nos. [34-2], [34-3]; [45] at 10:4–14.  As such, for the purposes of this Application, the Court finds that Mr. Xicará has properly authorized these proceedings and Respondents have not provided any evidence to the contrary.

**B. The Application Satisfies The Section 1782 Statutory Factors As To The Guatemalan And BVI Proceedings.**

**1. The Guatemalan Proceeding**

Respondents concede that the Application satisfies the statutory requirements with respect to the Guatemalan Proceeding.  *See* ECF No. [34] at 12.  First, Applicants are interested persons under Section 1782 because the Guatemalan Proceeding relates to the alleged misappropriation of their assets.  Second, the Application seeks the production of documents related to the alleged misappropriation of Applicants' assets.  Third, the documents sought are "for use" in the Guatemalan Proceeding because they will be used in support of the fraud allegations.  Finally, the discovery targets either reside or can be found in this District because the Application seeks discovery from two Florida corporations and two banks that maintain offices and regularly transact business in this District.  Therefore, the undersigned finds that the Application meets the Section 1782 statutory requirements with respect to the Guatemalan Proceeding.

**2. The BVI Proceeding**

Applicants do not request any additional discovery other than that already requested for use in the Guatemalan Proceeding.  ECF No. [45] at 36:2–15.  Respondents concede that the Application satisfies the first, second, and fourth Section 1782 statutory requirements as to the BVI Proceeding.  *See* ECF No. [34] at 12–13.  Indeed, Applicants are interested persons because the BVI Proceeding concerns the removal of Intervenor Christian Rasch as the president of Applicant Multiflora given his alleged misappropriation of Applicants' assets.  Moreover, the

Application seeks the production of documents related to the alleged misappropriation of Applicants' assets.  Finally, as set forth above, the four discovery targets can be found in this District.

The only issue before the Court as to the statutory factors and the Application's request for information concerning the BVI proceeding is whether the discovery sought is "for use" in the BVI Proceeding.  The "for use" statutory requirement is satisfied when the applicant can: (1) "inject the requested information into a foreign proceeding" and (2) the discovery is "something that will be employed with some advantage or serve some use in the proceeding."  *In re Ferrer*, No. 18-20226-CIV, 2018 WL 3240010, at *5 (S.D. Fla. July 3, 2018) (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)).  The statute "[does not] require that every document discovered be actually used in the foreign proceeding." *In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *5 (S.D. Fla. Dec. 18, 2018) (quoting *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009)).  It is enough that Applicant "intend[] to offer it in good faith and argue for its admission." *Id.*

Applicants initially argued that the requested discovery sought was necessary to dissolve the *ex-parte* injunction entered in the BVI Proceeding and to support contemplated counterclaims against Intervenor Christian Rasch for misappropriation of Applicant Multiflora's assets.  ECF No. [27] at 12.  As the BVI Proceeding progressed, Applicants clarified that the requested discovery was needed to support the counterclaims asserted on May 28, 2021.  ECF No. [38] at 4.  The declaration of Applicants' BVI counsel states that the counterclaim asserted in the BVI Proceeding requests: (1) "an injunction preventing [Intervenor Christian Rasch] from holding himself out as a director of Multiflora"; (2) "an order that [Intervenor Christian Rasch] discloses all accounting records in his possession relating to Multiflora"; and (3) "an order that [Intervenor Christian Rasch] discloses details of all transactions entered into by him, purportedly on behalf of Multiflora."  ECF No. [38-6] ¶ 3.  Respondents argue that Applicants have failed to demonstrate

how discovery related to Intervenor Christian Rasch's alleged misappropriation and transfer of the subject properties in any way relates to the BVI Proceeding.  ECF No. [34] at 13.  Moreover, Respondents argue that Applicants have failed to show how the requested discovery will be used to support the counterclaims asserted in the BVI Proceeding.  ECF No. [39] at 4–5.

The Court finds that the Application sufficiently describes how the requested discovery will be used to support to the claims and defenses currently asserted in the BVI Proceeding. Specifically, Applicants have adequately shown that the requested discovery is necessary to demonstrate that Intervenor Christian Rasch misappropriated Multiflora's assets and, as a result, that he was legitimately removed in lieu of his unlawful acts.  ECF No. [45] at 38:5–14.  In addition, the Court concludes that evidence regarding Intervenor Christian Rasch's misappropriation of Multiflora's assets could be relevant to the issue of Intervenor Christian Rasch's removal as the director of Multiflora.  As such, the statutory requirements are satisfied as to the Guatemalan and BVI Proceedings.

### 3. The *Intel* Factors Weigh In Favor Of The Application.

Having concluded that the statutory requirements have been satisfied as to the Guatemalan and BVI Proceedings, the Court now considers each *Intel* factor.

### a. The Discovery Targets Are Not Participants In The Foreign Proceedings.

The first *Intel* factor examines "whether 'the person from whom discovery is sought is a participant in a foreign proceeding.'"  *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264).  "[T]he Supreme Court explained that Section 1782 discovery is more likely to be justified when the person from whom the discovery is sought is not a participant in the prospective foreign proceeding."  *In re Jagodzinski*, No. 18-20606-MC, 2019 WL 1112389, at *5 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted*, No. 18-20606-MC-WILLIAMS/TORRES, 2019 WL

2255564 (S.D. Fla. Apr. 8, 2019) (citing *Intel*, 542 U.S. at 264).  Indeed, according to the Supreme

Court, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's reach . . .

[and] evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*,

542 U.S. at 264.

Here, it is undisputed that Jacobi International, Cart Investments, Bank of America, and

Morgan Stanley are all located in this District, are beyond the jurisdiction of the Guatemalan and

BVI courts, and are not named parties in the Guatemalan or BVI Proceedings.  ECF Nos. [27] at

16–17; [34] at 14.  Yet, Respondents argue that the first *Intel* factor "does not turn on the foreign

tribunal's power over the nominal targets of a Section 1782 application, but rather on the tribunal's

power over the discovery sought."  ECF No. [34] at 14.  To that extent, Respondents maintain that

this factor weighs against the Application because "all or a vast majority of the discovery sought

is within [Intervenor Christian Rasch]'s possession or control, and [Intervenor] is a participant in

the Foreign Proceedings and is within the jurisdictional reach of the foreign courts."  *Id.* (emphasis

omitted).  In other words, because Intervenor Christian Rasch exercises control over Jacobi

International and Cart Investments and the Bank of America and Morgan Stanley accounts,

seeking discovery from these entities is the functional equivalent of seeking discovery from

Intervenor Christian Rasch.  *Id.* at 14–15.

In his declaration, Intervenor Christian Rasch asserts that he is in possession of all the

requested documents and would produce them in the foreign proceedings upon request.  ECF No.

[18-1] at 13.  At the hearing on this matter, the undersigned specifically asked Intervenor Christian

Rasch's counsel whether Intervenor would not object to producing the Jacobi International, Cart

Investments, Bank of America, and Morgan Stanley documents if requested in Guatemala.  ECF

No. [45] at 42:5–8.  Counsel stated that Intervenor Christian Rasch "possesses the documents and

that if it comes to that, gets to that point in the foreign proceedings that he is open to producing

them." *Id.* at 42:9–18.  Thus, the issue before the Court is whether Intervenor Christian Rasch's representations that he has access to all the documents sought and that he would produce them if they were requested, weighs against granting this Application.

In response, Applicants emphasize that the discovery targets here are not participants in the foreign proceedings and seeking discovery from these entities is not the same as seeking discovery from Intervenor Christian Rasch.  ECF No. [38] at 4.  Specifically, Applicants argue that Intervenor Christian Rasch's assertion that he would produce the requested records is not sufficient to warrant denial of the Application.  *Id.* at 5–6.  As to Morgan Stanley and Bank of America, Applicants argue that they are entitled to obtain discovery directly from financial institutions because this is the "hallmark" of 1782 applications.  *Id.* at 5.  As to Jacobi International and Cart Investments, Applicants argue that Intervenor Christian Rasch is not the functional equivalent of these entities because his personal knowledge is not the same as the entities' corporate knowledge.  *Id.* at 6–7.  Finally, Applicants state that even if Intervenor Christian Rasch was in possession of the requested documents, there is no mechanism by which to obtain the documents in the foreign proceedings and there has been no showing that Intervenor actually has access to the documents.

First, the Court finds that as to Jacobi International and Cart Investments, Intervenor Christian Rasch's personal knowledge and the entities' corporate knowledge is not the same.  *See In re NanoPyxis Co., Ltd.*, No. 4:17-MC-80151-KAW, 2018 WL 1156838, at *3 (N.D. Cal. Mar. 5, 2018).  In *In re NanoPyxis*, the CEO of a company that was the discovery target of a 1782 application in the United States argued that the company was, in effect, a participant in a proceeding in Korea because the CEO was a named defendant in that proceeding.  *Id.*  Specifically, the CEO argued that the Korean court had jurisdiction over him and could compel the documents directly from him.  *Id.*  The court concluded that "personal knowledge and corporate knowledge

are different, as corporate knowledge includes the collective knowledge of all of its employees, agents, and counsel, . . . as well as information contained in its records . . . ." *Id.* Thus, even if the CEO had all the requested documents in his possession, custody, and control, he "is an individual [that] is not held to the same standard in discovery as a corporate entity." *Id.* Here, as in *In re NanoPyxis*, the Court is unpersuaded by Intervenor Christian Rasch's assertion that he could produce the requested documents on behalf Jacobi International and Cart Investments. The subpoenas undermine Respondents' assertion because they request information solely within the scope of the entities' corporate knowledge. Because Jacobi International and Cart Investments are not participants in the foreign proceedings, Applicants are entitled to seek information within their corporate records and directly from the entities themselves. Thus, the Court finds that this factor weighs in favor of granting the Application as to Jacobi International and Cart Investments.

Moreover, as to Bank of America and Morgan Stanley, it is undisputed that the banks are not participants in the foreign proceedings. To that extent, "in the context of intra-shareholder disputes," district courts may grant a 1782 application that seeks discovery from a bank where the subpoenas "are broader in scope than, and not clearly duplicitous of, documents" that could be obtained directly from the company or from the shareholders in the foreign proceeding. *In re: Application of Bracha Found.*, 663 Fed. Appx. 755, 765 (11th Cir. 2016) (concluding that "the district court did not abuse its discretion in granting an application seeking domestic documents in the possession of a domestic [bank] that would not be available in the foreign jurisdiction"). In this case, the Bank of America subpoena for an account that Intervenor Christian Rasch maintains in this District requests documents related to the real estate transactions at issue. ECF No. [27-1] at 2–12. Likewise, the Morgan Stanley subpoena for an account that Applicant Multiflora maintains in this District also requests documents related to the unauthorized real estate transactions. *Id.* at 26–36. As such, the subpoenas seek information to substantiate, among other

30

things, fraud and misappropriation claims brought in criminal and civil proceedings against Intervenor Christian Rasch.  Given the contentious nature of the ongoing proceedings, a dispute regarding the accuracy and completeness of the production is inevitable.  Because the foreign courts have no jurisdiction over the banks, Applicants would have no mechanism in those forums to address any production disputes.  Therefore, the Court finds that this factor weighs in favor of granting the Application as to Bank of America and Morgan Stanley.

In support of the proposition that seeking discovery from the discovery targets here is the same as seeking discovery from Intervenor Christian Rasch "for all intents and purposes," Respondents cite various cases that are readily distinguishable.  First, Respondents rely on *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, where various German investors filed securities actions in Germany and the United States.  376 F.3d 79, 81 (2d Cir. 2004).  The application sought discovery from the American law firms that represented the defendants in the United States for use in the German proceedings.  *Id.*  The Second Circuit Court of Appeals concluded that the district court did not err in in concluding that the law firms were, for "all intents and purposes," participants in the German litigation and subject to the jurisdiction of the foreign court.  *Id.* at 85.  Specifically, the district court correctly found that seeking discovery from the law firms was essentially the same as seeking discovery from the "opponent in the German litigation."  *Id.*

As to Jacobi International and Cart Investments, the holding in *Schmitz* is not instructive because the relationship between the law firm in that case and the parties here is markedly different.  Unlike a law firm, which acts directly at the direction and on behalf of its clients, Jacobi International and Cart Investments are Florida corporations with their own legal existence.  As set forth above, Jacobi International and Cart Investments' corporate knowledge is not tantamount to Intervenor Christian Rasch's knowledge as the representative of these entities.  Moreover, as to Bank of America and Morgan Stanley, Intervenor Christian Rasch's assertion that he would

31

collect, sort, and produce all the requested financial documents is insufficient in light of the unique circumstances presented in this case. Indeed, Applicants are under no obligation to accept Intervenor Christian Rasch's assertion that he *would* produce the documents requested.

Respondents also rely on *In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN, 2015 WL 3439103 (D. Nev. May 28, 2015), which is also readily distinguishable. In *Macquarie Bank*, the foreign proceedings concerned the sale and transfer of shares in a Dutch company. *Id.* at *1. The application sought documents from the director of the company in order to establish the value of the shares. *Id.* at *6. The company, who was a party to the foreign proceeding, was already under an obligation to produce said documents in the foreign venue. *Id.* at *6–7. Notwithstanding, the application sought those documents directly from the director of the company in the United States. *Id.* at *7. The court concluded that seeking discovery from the director of a foreign company that was a party to a foreign proceeding "militates squarely against allowing the discovery sought." *Id.* at *6. Specifically, the court noted that the documents at issue could be obtained directly from the company in the foreign proceeding and, in fact, most of the discovery sought was already compelled in that proceeding. *Id.* at *6–7.

The holding in *Macquarie Bank* is not instructive because, as set forth above, the subpoenas in this case seek information from independent entities with their own corporate knowledge. Unlike *Macquarie Bank*, the discovery sought is not for documents that Intervenor Christian Rasch would possess in his individual capacity. Instead, the subpoenas seek information within the scope of the discovery targets' corporate knowledge, which the Court finds is entirely unrelated to Intervenor Christian Rasch's personal knowledge. Therefore, because the case cited does not stand for the proposition that having access to the records requested means that Intervenor Christian

Rasch and the discovery targets are the same, the undersigned concludes that the first *Intel* factor weighs in favor of granting the Application.[7]

> **b. The Record Reflects That The Guatemalan And BVI Courts Are Receptive To Foreign Discovery.**

The second *Intel* factor examines whether the foreign tribunal is willing to consider the information sought. *In re Jagodzinski*, 2019 WL 1112389, at *6. In examining the second *Intel* factor, the court looks at whether authoritative proof exists that a foreign court would reject evidence obtained with the aid of § 1782. *In re MTS Bank*, No. 17-21545-MC, 2017 WL 3155362, at *6 (S.D. Fla. July 25, 2017). Moreover, there is a difference between a foreign court's receptivity or nonreceptivity to the information requested and the "foreign discovery requirement." *H.M.B. Ltd.*, 2018 WL 4778459, at *5, *9. Ultimately, the party requesting discovery does not have to meet a threshold requirement that evidence sought would be discoverable under the law governing the foreign proceeding. *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 n.3 (S.D. Fla. July 13, 2012).

Here, it is undisputed that courts in Guatemala and the British Virgin Islands are receptive to foreign discovery. *See Super Vitaminas, S. A.*, No. 17-MC-80125-SVK, 2017 WL 5571037, at *3 (N.D. Cal. Nov. 20, 2017) (noting that there was no evidence that Guatemalan court would not be receptive to foreign discovery); *see also In re: Application of Bracha Found.*, 663 Fed. Appx. at 759, 766 (affirming an order granting a 1782 application for use in the British Virgin Islands).

---

[7] Respondents also rely on *MetaLab Design Ltd. v. Zozi Int'l, Inc.*, No. 17-MC-80153-MEJ, 2018 WL 368766 (N.D. Cal. Jan. 11, 2018). However, the court there merely concluded that the record was unclear as to whether the subpoena recipient was a participant in the foreign proceeding. *Id.* at *3. In addition, Respondents rely on *In re Ex Parte LG Electronics Deutschland GmbH*, No. 12CV1197-LAB MDD, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012), where the court "exercise[d] its discretion" in finding that because it was unclear whether the discovery sought could be obtained from the foreign litigant, the first *Intel* factor weighed against the 1782 application. The record here is clear that the subpoenas seek information possessed by entities about their corporate knowledge.

The Nuñez and Carroll Declarations emphasize that the Guatemalan and BVI courts would be receptive to the discovery sought here.  ECF Nos. [38-2], [38-6], [38-7].  Respondents have not provided any evidence to the contrary.  Instead, Respondents submitted the Linares-Beltranena Declaration, which merely states that Guatemalan courts may find evidence submitted by parties to be less credible than evidence procured directly by the prosecutor.  ECF No. [13-2].  The Court here does not endeavor to "predict the admissibility of discovered evidence in foreign tribunals." *In re Request for Assistance From Ministry of Legal Affairs of Trinidad & Tobago*, 117 F.R.D. 177, 179 (S.D. Fla. 1987) (quoting *John Deere Limited v. Sperry Corp.*, 754 F.2d 132, 137 (3rd Cir.1985)); *In re Bernal*, 2018 WL 6620085, at *5 (noting that even if the foreign courts "ultimately decide not to consider the evidence sought, this is not fatal to the § 1782 petition because the requested discovery could conceivably be used to some advantage in the foreign proceeding").  The showing made as to this prong is sufficient and weighs in favor of the Application.

      **c.**  **The Application Is Not An Attempt To Circumvent Foreign Proof-Gathering Restrictions.**

The third *Intel* factor examines whether the Applicant's § 1782(a) request "attempt[s] to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  While the Court does not require an applicant to conclusively establish that they have exhausted all discovery attempts abroad, "a perception that an applicant has 'side-stepped' less-than favorable discovery rules by resorting immediately to § 1782 can be a factor in [the] court's analysis."  *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) (internal quotations omitted).  Nevertheless, the Eleventh Circuit has held that, "even when requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-

US tribunal or exhaust other options before applying to a district court for § 1782 discovery." *In re Application of Bracha Found.*, 663 F. App'x at 765.

Respondents argue that Applicants are "jumping the gun" on discovery because the Guatemalan prosecutor has yet to determine the merits and scope of the Proceedings. ECF No. [34] at 19. In addition, Respondents insist that Intervenor Christian Rasch has access to all the discovery sought and would provide the documents if requested. *Id.* In response, Applicants state that the arguments raised by Respondents are now moot because the Guatemalan court has arraigned Intervenor Christian Rasch and placed an embargo on his accounts given possible unlawful acts in relation to Applicant Entre Rios. ECF No. [38] at 9–10.

In this case, Respondents conceded that there are ongoing Guatemalan and BVI Proceedings. ECF No. [45] at 28:13–19, 39:20–40:7. It is clear that both the foreign proceedings and the subpoenas here specifically relate to the unauthorized sale of Applicants' property. *See* ECF No. [27-1]. Thus, Respondents' argument regarding the unascertained scope of the foreign proceedings fails. The Court finds that the Application is not an attempt to "jump the gun" on discovery in the foreign proceedings because those proceedings are actively progressing, the discovery targets are not parties in those proceedings, are not subject to the jurisdiction of the foreign tribunals, and cannot not be compelled to respond to discovery there. *See, e.g.*, *In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, No. 20-25212-MC, 2021 WL 2323226, at *8 (S.D. Fla. June 1, 2021), *appeal dismissed sub nom. Deposito Centralizado de Compenasacion y Liquidacion de Valores Decevale, S.A. v. Ecuador High Yield Fund, LLC*, No. 21-11889-CC, 2021 WL 4049325 (11th Cir. July 7, 2021) (concluding that the third *Intel* factor weighed in favor of the application because the discovery targets were Florida entities and were not subject to the jurisdiction of the foreign courts). Therefore, the Court concludes that the third *Intel* factor weighs in favor of granting the Application.

d.  **The Application Is Overly Broad Only To The Extent It Requests Information Regarding Sanacaj, S.A.**

The final *Intel* factor considers whether the Application contains "unduly intrusive or burdensome requests." *Intel*, 542 U.S. at 265.  Requests must be narrowly tailored, so that the items sought are relevant in the foreign proceeding.  *See In re Bernal*, 2018 WL 6620085, at *26–27 (holding that subpoenas with the words "relating to" or "regarding" with no specificity of the nature to the communication sought can render a discovery request facially overbroad and burdensome).

As an initial matter, the Court notes that the subpoenas have been significantly narrowed in comparison to their former version.  *See* ECF No. [3-1].  The subpoenas provided in the Application now are narrowly tailored to the issues addressed in the Guatemalan and BVI Proceedings and only request information regarding the transfer of Applicants' properties.  *Compare id.*, with ECF No. [27-1].  To that extent, the fourth *Intel* factor weighs in favor of granting the Application.  Finally, the Court finds Respondents' argument that the subpoenas are repetitive without merit.  The subpoenas have been sufficiently narrowed and to the extent there is overlap in the requests, Respondents would only have to produce the documents once.

Respondents argue that the subpoenas are overly broad to the extent they seek information regarding transfers to Sanacaj, S.A., a company controlled by Intervenor Christian Rasch's wife.  ECF No. [34] at 21.  Respondents state that Sanacaj was never referred to or defined in the Application or subpoenas, and as such, it is unclear what relevance the company has to the Parties' dispute.  *Id.*  In addition, Respondents state the subpoenas are overbroad to the extent they make the same document request multiple times.  *Id.* at 21–22.  Applicants state that the subpoenas have been sufficiently narrowed and only request information directly related to the ongoing proceedings.  ECF No. [38] at 10.  As to Sancaj, Applicants point to a California 1782 application

that resulted in Applicants' discovery that Intervenor Christian Rasch has been funneling assets through companies controlled by his family members. *Id.* at 10–11. To be clear. Applicants reference the 1782 application in *In re Application of Multiflora International LTD*, Case No. 20-mc-80193, filed in the Northern District of California. In that case, Applicants sought discovery from Caban Systems, a California company controlled by Intervenor Christian Rasch's daughter, who they allege was the recipient of $250,000.00 transferred from Multiflora's bank account in April 2018. *See* Order on Application to Conduct Discovery in Foreign Litigation Pursuant to 28 U.S.C. § 1782, *In re Application of Multiflora International LTD*, No. 20-mc-80193, at 2 (N.D. Cal. June 29, 2021), ECF No. [13]. After the California application was filed, "Applicants and Caban filed a stipulation requesting that the court refrain from taking action on the application while they attempted to reach an agreement without court intervention." *Id.* at 3. However, based on Caban's failure to provide complete discovery responses, the court issued an order granting the application. *Id.* Notwithstanding the California proceeding, the Court agrees with Respondents that the Application and the subpoenas do not provide sufficient information to determine the need for documents related to Sanacaj. As such, any requests as to Sanacaj, S.A., is hereby **DENIED WITHOUT PREJUDICE**.

**III.    CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Second Application, ECF No. [27], is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Application is **GRANTED**, however, any request as to Sanacaj, S.A., is **DENIED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 22, 2021.

_____
JACQUELINE BECERRA
United States Magistrate Judge